**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSEPH FORD JR.,** individually, **EDWARD PERSHWITZ,** individually, and on behalf of all others similarly situated, | Case No. |
| *Plaintiffs*, | **CLASS ACTION COMPLAINT** **DEMAND FOR JURY TRIAL** |
| *v.* | |
| **USHEALTH GROUP, INC.,** a Texas corporation, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiff Joseph Ford Jr. ("Ford" or "Plaintiff Ford") and Plaintiff Edward Pershwitz ("Pershwitz" or "Plaintiff Pershwitz") bring this Class Action Complaint and Demand for Jury Trial against Defendant USHealth Group, Inc. ("USHealth" or "Defendant") to stop USHealth from violating the Telephone Consumer Protection Act ("TCPA") by making unsolicited, prerecorded and autodialed calls, and text messages to consumers without their consent, including unsolicited calls to phone numbers registered on the National Do Not Call registry (DNC) as well as to consumers who have expressly requested that the calls stop, and to otherwise obtain injunctive and monetary relief for all persons injured by USHealth's conduct. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### INTRODUCTION

1.       USHealth sells health insurance plans and supplementary products to consumers that are underwritten by The Freedom Life Insurance Company of America.

2.      USHealth Advisors is a wholly owned national sales and distribution subsidiary of Defendant USHealth.[1] Agents working on behalf of USHealth either identify as USHealth Group or USHealth Advisors.

3.      USHealth provides its agents with a dialer system, as well as potential leads for the agents to contact.

4.      Unfortunately, when USHealth provides these leads, it appears that multiple USHealth agents have access to those leads resulting in consumers receiving multiple solicitations from multiple USHealth agents.

5.      USHealth solicits business from consumers using prerecorded calls, autodialed calls and autodialed text messages. Unfortunately, many of these calls and texts are being placed without clear and conspicuous express written consent in violation of the TCPA.

6.      In addition, because multiple USHealth agents are given access to new leads, consumers continue to receive solicitation calls and text messages despite requesting USHealth agents to stop contacting them.

7.      In Plaintiff Ford's case, USHealth agents placed multiple autodialed calls and sent multiple autodialed text messages to his cellular phone, despite his requests to Defendant that they were contacting the wrong phone number.

8.      In Plaintiff Pershwitz's case, USHealth agents sent multiple autodialed text messages and at least 2 prerecorded calls to his cellular phone despite Plaintiff Pershwitz informing them that they had the wrong phone number and to stop contacting him.

9.      Both of the Plaintiffs had their cellular phone numbers registered with the National Do Not Call registry (DNC) at least 30 days prior to receiving any calls or texts from the Defendant.

---

[1] https://www.linkedin.com/company/ushealth-advisors/

10.     In response to these calls, Plaintiff Ford and Plaintiff Pershwitz are filing this lawsuit seeking injunctive relief, requiring Defendant to cease directing its agents to violate the TCPA as well as an award of statutory damages to the members of the Classes and costs.

## PARTIES

11.     Plaintiff Ford is an Edwardsville, Pennsylvania resident.

12.     Plaintiff Pershwitz is a Plano, Texas resident.

13.     Defendant USHealth is a Texas corporation headquartered in Fort Worth, Texas. Defendant conducts business throughout this District, the State of Pennsylvania, and throughout the United States.

## JURISDICTION AND VENUE

14.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227.

15.     This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant does significant business in this District and the state of Pennsylvania, and because the wrongful conduct giving rise to this case occurred at, or was directed to this District.

## COMMON ALLEGATIONS

**USHealth Directs Its Agents to Market its Services Using Leads and a Dialer System Provided By USHealth**

16.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

3

17.     Yet in violation of this rule, Defendants fail to obtain any express written consent prior to making autodialed and pre-recorded solicitation calls and texts, including to phone number registered on the do not call registry. In fact, on information and belief, Defendant purchases leads from lead vendors.

18.     In placing the calls that form the basis of this Complaint, Defendants utilized an automatic telephone dialing system ("ATDS" or "autodialer") in violation of the TCPA. Specifically, the hardware and software used by Defendants has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendants' automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

19.     In sending the unsolicited text messages at issue, Defendant, or a third party acting on its behalf, used an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be texted en masse.  This is evident from the circumstances surrounding the text messages, including the ability to trigger an automated response by replying "STOP," and the text messages' commercial and generic content, that substantively identical texts were sent to multiple recipients, which is consistent with the use of an automatic telephone dialing system to send text messages.

20.     USHealth provides its agents with leads that agents are expected to solicit business from using an autodialer sytem.

21.     One USHealth agent stated on Glassdoor that he had to purchase an "$85.00 a month subscription to an auto dialer service that they [USHealth] use so they could track [his] activity daily and [he] could call their leads."[2]

22.     Another agent commented on Glassdoor that USHealth is "very proud of their dialer system that provides potential leads, however it requires hours of 'dialing' to possibly reach a few people that may be interested in hearing about what they offer."[3]

23.     In a job posting that was posted by USHealth, agents are told that they are given free leads, lists, an autodialer, SMS marketing and more if they join USHealth:

## EXPERIENCED SALES AGENTS! Uncapped growth

USHEALTH Advisors ● Tampa, FL 33634 USA

| Compensation | **$65,000 to $250,000 Annually (plus commission)** |
| Employment Type | **Full-Time** |

**Online now - rapid response!**

**Why Work Here?**
*"UNLIMITED INCOME POTENTIAL, FREE LEADS, WEEKLY PAYOUTS, RESIDUAL INCOME, STOCK PROGRAMS WITH ONE OF THE FASTEST GROWING INSURANCE COMPANIES!"*

USHA is one of the fastest growing health insurance agencies in the country. We have a system that's fail proof to anyone willing to put forth the effort of building their business.

The #1 reason reason insurance agents don't succeed is lack of support. Most opportunities are going to give you a product to sell, and if you're lucky, some old leads to call on... and the majority don't even give you that! They'll sell you the dream, get you contracted, then hit you with hundreds of dollars in expenses, or tell you , "Now go get it!"

***At USHA, we're different! We provide the following at absolutely NO COST TO YOU!***

- ***FREE LEADS (EXCLUSIVE, SHARED, TELEMARKETED, LIVE TRANSFERS, LISTS, ECT. . . )***
- ***FREE CRM (EMAIL CAMPAIGNS, AUTO DIALER, SMS MARKETING AND MORE)***
- ***A MENTOR FOR YOU TO CALL ON WHEN YOU HAVE QUESTIONS*** [4]

24.     USHealth places very high demands upon its sales agents, specifically requiring them to make hundreds of calls per day.

25.     For example, on USHealth's Glassdoor reviews, multiple employees have posted about the number of calls they are required to place each day:

> When training was complete I was assigned leads in the states I was licensed in and told that I needed to dial between 200 to 300 dials a day to get the necessary appointments needed to get some cases sold. I was told that any presentations my manager did for me [5]

While another states on Indeed.com:

> I was let go from here because I didn't write an application in a certain time period, and they just cut you off from your agent portal and do not let you know it is going to happen. It is a commission only job, so I was not sure why they would, since they don't pay me a salary. The company expects you to make around 300 phone calls a day, but some people aren't cut out for that, and then you have to go make some business yourself, so you are out on your own. [6]

26.     The autodialer service that USHealth provides to its staff is called VanillaSoft.

27.     In training videos that VanillaSoft posted on Youtube, the company explains how the autodialer system works, showing that it automatically pulls up potential consumer profiles and then automatically dials the consumer's phone number.[7]

28.     The instructor in the above video explains "There are 2 main flavors of dialing: one is preview dialing, which is click to call, the other option is progressive dial and that's more like a power dialer…you will typically be on progressive."[8]

---

[2] https://www.glassdoor.com/Reviews/Employee-Review-USHEALTH-Group-RVW11742421.htm

[3] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066.htm?sort.sortType=RD&sort.ascending=false&filter.employmentStatus=REGULAR&filter.employmentStatus=PART_TIME&filter.employmentStatus=UNKNOWN

[4] https://www.ziprecruiter.com/jobs/ushealth-advisors-2491d4a2/experienced-sales-agents-uncapped-growth-70d3d14e

[5] https://www.glassdoor.com/Reviews/Employee-Review-USHEALTH-Group-RVW11742421.htm

6 https://www.indeed.com/cmp/Ushealth-Group/reviews

[7] https://www.youtube.com/watch?v=96XPolmJx1c

[8] *Id.*

29.     In other words, based on instructions provided by the instructor in the video referenced above, USHealth agents are encouraged to use the autodialer. The system VanillaSoft will automatically load up contacts and dial them without any human intervention.

30.     In 2017, VanillaSoft began to offer USHealth agents the ability to send text messages, including autodialed text messages to consumers:



31.     In fact, VanillaSoft touted its SMS Text Feature with a special focus on automated (autodialed) texting:

## Never Lose Touch

VanillaSoft's SMS and email features help you stay in front of your customers and prospects. Integrate your emails and SMS with your phone calls to educate, qualify and build your brand. It's easy to build an effective email strategy that increases contact and response rates. Easily create templates, send automated drip emails, manage mass email campaigns, and even automate appointment reminders with SMS texting.

**Automate Messaging**

Create email and SMS templates that can auto send based on your sales cadence.

**Increase Response**

Automatically personalize email and SMS content based on key contact variables within the system.

**Transparency**

All email and SMS data is stored with the contact for better visibility into correspondence history and message performance.

10

---

9 https://www.vanillasoft.com/company/news-events/vanillasoft-now-offers-sms-text-feature-increase-lead-engagement-opportunities/

10 https://www.vanillasoft.com/product/features/e-mail-sms-marketing/

7

32.  Based on the training that is provided to USHealth agents, along with leads provided by USHealth, it is not surprising to see that there are numerous complaints posted online about the unwanted calls and/or text messages that consumers have received. This is just a small sampling of those complaints:

- "USHealth Advisors makes calls soliciting business to people on the Do No Call Registry. I have received call after call from various people trying to inquire about whether I maintain my own health insurance or not." The same consumer also wrote, "Every time I request to be removed from their call list (if the person doesn't hang up the minute I mention they have violated the Do Not Call Registry."[11]
- In response to the above complaint, another consumer wrote, "Same. Got my insurance but they keep calling. Today alone I've received 19 calls and 7 voicemails. It's not even 1pm. To say it's ridiculous is not even touching it. It's harassment."[12]
- Another consumer responded, "Well I certainly did not request anything and they are under the impression I am a 60 year old male and I am a 30 year old woman. I have told over 13 advisors this and they still harass me."[13]
- "This company has been calling nonstop for about 2 weeks now. I don't know where they got my name or number. I've asked dozens of times for them to stop calling." The same consumer also wrote "Sometimes they don't say anything at all."[14]
- "I am getting non stop calls from this company. I have asked to be removed from their mailing list and they wont take me off and call me 30times a day."[15]
- "I have been getting harassed by these people, receiving 20+ calls a day. It is annoying at best and at worst full on harassment. And the person they are trying to reach isn't even me! Not only am I receiving the phone calls but I am constantly getting texts…"[16]

## PLAINTIFF FORD'S ALLEGATIONS

**USHealth Agents Called Plaintiff Ford's Cell Phone Numbers Without Plaintiff Ford's Consent Using an Autodialer**

---

[11] https://ushealth-advisors.pissedconsumer.com/harassing-phone-calls-201803081205851.html
[12] id
[13] id
[14] https://ushealth-advisors.pissedconsumer.com/harassment-daily-harassment-and-inappropriate-201803011200463.html
[15] https://www.bbb.org/us/tx/hurst/profile/insurance-services-office/us-health-advisors-james-schmitt-0825-235981131
[16] id

8

33.     On July 27, 2006 Ford registered his cellular phone number with the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls and text messages on his cellular phone.

34.     Beginning in October 2017, Ford received a barrage of unsolicited autodialed calls on his cellular phone, apparently regarding an "insurance inquiry" which he never made.

35.     Among the many calls Ford received were autodialed calls from USHealth agents, all seeking to offer him health insurance quotes.

36.     When Ford answered the calls from USHealth agents, he noticed that there was a definite pause before the agent would come on the line; this pause is indicative of the use of an autodialer.

37.     Ford made it clear to the agents that he was not looking for insurance and asked for the calls to stop.

38.     However, the calls did not stop.

39.     When it became clear that he would not be taken off their call list, Ford began to block the telemarketing phone numbers.

40.     But this did not stop USHealth agents from contacting him.

41.     On October 20, 2017 a USHealth agent contacted Ford through a text message, acknowledging the numerous calls Ford was receiving.

42.     The text was sent at 8:05 PM from phone number 813-515-3873 stating,

"Hi, this is Sam, I'm a licensed health insurance agent in your state. I have been assigned to help you select your health coverage. I don't want to bombard you with annoying calls like everyone else. My job is to simply make sure you feel comfortable with your health Insurance. I have access to every policy in your state and I'd be happy to show you your range of options even if you are just looking for quotes. Are you looking for a individual or family plan. Thank you, Sam[.] Call my Direct line 201-245-8811."



43.     On October 27, 2017 at 4:36 PM Ford sent a reply to 813-515-3873 – "Stop".

44.     He then received an immediate response from 813-515-3873 stating, "To stop Pinger texts from 18135153873 reply STOP to confirm[.]" Ford replied immediately, "Stop[.]"

45.     On October 25, 2017 at 10:16 AM Ford received a call from Defendant using phone number 570-471-5522.

46.     The call was not answered, but a voicemail was left identifying the agent as being "Angel Williams".

47.     On October 25, 2017 at 10:16 AM, at the exact same time Ford missed a call from USHealth agent Angel Williams, Ford received a text message from Defendant, this time from another agent using phone number 907-306-6455.

48.     This text message also makes reference to all the calls Ford was receiving, stating:

10

"Angel Williams USHEALTH Group 9073066455 www.ushagent.com/angelwilliams" then "Good morning Sari, It's Angel your licensed US Health Advisor, I know you've been getting a lot of calls from thirsty pushy agents! I'm an advisor which is much different. My job is to educate my clients about the options they qualify for, evaluate their current coverage if covered and explain what plans cover and what they don't. I'm licensed with the state and can shop all the plans in the area. My national producer number is 18331651. When your ready to speak with a professional give me a ring! Blessings, Angel Williams 907-306-6455 USHEALTH Advisors[.]"

    49.    These are screenshots of the text messages Ford received:



    50.    Ford sent an immediate reply to 907-306-6455 stating, "Please stop contacting me take my number of your list thank you."

    51.    Despite the two stop requests he sent, Ford received yet another text from 907-306-6455 on October 28, 2017 at 2:30 PM stating, "Angel Williams USHEALTH Group 9073066455 www.ushagent.com/angelwilliams" then another:

"Good afternoon Sari, It's Angel your licensed Advisor with USHealth, Unfortunately you've been getting a lot of calls from thirsty pushy agents [unhappy face emoticon] I can help! My job is to find you the best coverage for the best rate while explaining how the plans work! New marketplace Premiums just posted today increases from 40% - 60%. If you qualify with good health I have access to New plans with preferred rates that can save you money and get you better coverage! Are you interested in a quote and reviewing your options?"



52.     Ford sent an immediate reply to 907-306-6455 stating, "Not interested ….stop."

53.     He then sent another text, "Stop[.]"

54.     This time, Ford did not receive any confirmation that the text messages would stop.

55.     Soon after, on October 28, 2017, Ford received another set of unsolicited text messages on behalf of Defendant USHealth, this time from phone number 813-860-1993 stating, "Hey Sari, this is Rachel with USHEALTH. I'm sure you are getting a lot of calls so I was texting you in regards to the health insurance quote request you[.]"

56.     Because the text was so long, it arrived in two parts. The second part states, "put out. Was this for you or your family also?"

57.     Because this text message came in as two text messages, it is clear this is a standard SMS text message, not a MMS like the aforementioned text messages Ford received.

58.     Ford sent an immediate response to 813-860-1993. Frustrated with all the calls and text messages, he wrote, "We have insurance now.Thank You very much would you kindly put our name on your do not call list Thank You Rachel have a good evening."

59.     Ford does not have a relationship with USHealth, has never provided his telephone number directly to USHealth, or requested that USHealth send text messages to him or offer him its services.

60.     He is not familiar with anyone named Sari, the name referenced in some of the text messages he received.

61.     Simply put, Ford has never provided his prior express written consent to USHealth to place calls and/or send text messages to him and he has no business relationship with Defendant.

### PLAINTIFF PERSHWITZ'S ALLEGATIONS

**USHealth Agents Called Plaintiff Pershwitz's Cell Phone Numbers Without Plaintiff Pershwitz's Consent Using an Autodialer**

62.     On October 6, 2006, Pershwitz registered his cellular phone number with the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls and text messages on his cellular phone.

63.     In the middle of November, 2018, Pershwitz began to receive calls and text messages from USHealth agents to his cellular phone, trying to solicit him for the purchase of health insurance.

64.     When the text messages first began, Pershwitz received a text message from a USHealth agent to which he replied that the agent had the wrong number.

65.     That particular agent did stop contacting Pershwitz, but other USHealth agents continued to try and solicit business from him.

66.     All of the text messages and calls that Plaintiff Pershwitz received were to his cellular phone.

67.     Soon after informing the agent that USHealth had the wrong phone number, Pershwitz received two identical prerecorded voicemail messages from another US Health agent Mike Bixler[17] on the same day, both from 734-479-9939 on his cellular phone. The messages state,

"Have you experienced the costs of the State exchange and do you find them to be too much? Is the deductible that needs to be met out of pocket first too much? Call me or text me Mike Bixler at 734-634-1308 and I'll give you a quote right over the phone. We have a national BPO in-program. We're a great [unknown]. We're an award winning program. Just give me a call 734-634-1308 and I'll give you a quote right over the phone. Let's compare. I look forward to it. Thanks."

68.     On November 19, 2018 at 11:28 AM, Plaintiff Pershwitz received a text message from a USHealth agent using phone number 248-289-9806. The text message states,

"Jean, good morning! It's Terri Herrera licensed health insurance advisor with the state of TX. Instead of bombarding you with phone calls, I figured a text would work better. Just to verify I have you in Rockwall Zip- 75032 and your DOB of 09/21/1976. Were you looking for just yourself or you and your family?"

---

[17] https://www.linkedin.com/in/mike-bixler-a7546539/



69.     None of the details stated in the above text match Plaintiff Pershwitz. The name,

city, zip code and date of birth are all incorrect as they pertain to Pershwitz, clearly indicating the

fact that USHealth had the wrong data in its system.

70.     Pershwitz received another text message on November 19, 2018 from a US

Health agent Guillermo 'William' Salazar,[18] this time at 4:45 PM from phone number 407-924-

3334. The text message states:

"Jean, this is William Salazar, licensed health advisor with the state. Let me search all
plans for you. I do have you in 75032. Is the coverage just for yourself, or family as well? I'm
only going to text you a quote, no phone calls/harassment."



---

[18] https://www.linkedin.com/in/guillermosf/

15

71.     The zip code stated in the above text message does not match the zip code where

Pershwitz lives.

72.     Pershwitz received 2 more text messages on November 19, 2018, one at 8:02 PM

and the next at 8:03 PM, both from phone number 813-360-7768. The text messages state,

> "Hey Jean, Zac here just following up on a recent request I received for some health
> coverage information. I can provide you with options. Was it just for[.]" The second text
> message continues from the first stating, "yourself or your family as well?"



73.     On November 20, 2018 at 9:19 AM, Pershwitz received another text message

from a USHealth agent, this time using phone number 813-403-3600 stating,

> "Jean, I find it more respectful to text since you may be busy. Its Randy, licensed health
> advisor with the state of TX assigned to your request. I can simply text you accurate
> health insurance quotes so you can void the annoyance of phone calls. Were you looking
> for just yourself, or for you and your family?"

16



74.     The same agent texted Pershwitz again on November 21, 2018 at 10:25 AM,

again using phone number 813-403-3600 stating,

> "Hi Jean, this is Randy following up again. My goal here is I want to find a nice balance between the premiums you pay and benefits you receive. If you've been bombarded I do have a website you can go to, to stop the calls. What has you looking for better health coverage options?"



75.     Mike Bixler, the same USHealth agent that left 2 identical prerecorded messages

for Pershwitz also sent a text message on November 20, 2018 at 2:11 PM using phone number

331-209-5758. The text message states,

> "Jean, This is the busy time, Open Enrollment. I can tell you there is not a plan out there that can cover you better with more tools like No Annual Deductible or Copay and with a PPO than the plan I have available. This is a national plan that will cover you from everyday Wellness to the finest coverage for Catastrophic. Call or text me at 734-634-1308 and I'll give you a quick quote over the phone. If you're interested we can move on, if this doesn't interest you've lost nothing. Mike Bixler, Licensed Agent,, Tuesday,

17

November 20 2018, 9:45 AM. Call or text me at 734-634-1308 and I'll give you a quick quote over the phone. If you're interested we can move on, if this doesn't interest you've lost nothing. Mike Bixler, Licensed Agent,"



76.     Pershwitz received 5 text messages, all of which are part of the same message on November 20, 2018, all at 3:23 PM from another USHealth agent, this time using phone number 203-559-0189 stating,

> "Hello, this is Anthony licensed agent with the state. Just reaching", then in another text message, "out for our recent request for health coverage i can simplify that", then in another text message, "process for you. I'm sure you're at work or having family time, and", then in another text message, "out of respect I figured I'd text you instead. You you like me to", then in another text message, "send you a quote? If not, I will not call or bombard your phone."

18



77. Pershwitz received yet another text message from another USHealth agent Brian Colon Rosado[19] on November 20, 2018, this time at 7:23 PM using phone number 813-449-2397. The text message states,

> "Jean, I know the last thing you probably want are a million calls from crazy insurance people, so I am going to make this as convenient as possible for you by simply sending you a range of options by text. We can then discuss if interested. My name is Brian Colon, and I do have you in Rockwall (zip 75032) Is the coverage just for yourself, or your family?"

---

[19] https://ushagent.com/BRIANCOLONUSHA



78.     As with previous text messages, the contact information attributed to "Jean" does not match Pershwitz. That is, the city name (Rockwall) and zip code do not match Pershwitz's contact information.

79.     Pershwitz received another unsolicited text message to his cellular phone from yet another USHealth agent Javier Cruz[20] on November 21, 2018 at 11:11 AM, this time from phone number 813-464-9591. The text message states,

> "Hey Jean, I find it more respectful to text since you may be busy at work. It's Javier, licensed health advisor assigned to your request. It's open enrollment and things are busy, now is the time to enroll in a plan. I can get you a free quote and put you in a better position. Were you looking for just yourself, or for you and your family? License# W404566 NPN# 18439800"

---

[20] https://ushagent.com/javiercruz



80.    On November 26, 2018 at 10:00 AM, Pershwitz received yet another unsolicited

text message to his cellular phone from a USHealth agent, this time from phone number 813-

344-5511. The text message states,

> "Hi Jean! This is Giovanni, licensed insurance professional in TX. Your file is going to
>
> be closed out, did you get your health insurance resolved? If I close it you'll lose access
>
> to a lot of plans, including PPO's plans with $0 deductibles."



81.    Again on November 26, 2018, this time at 4:02 PM, Pershwitz received an

unsolicited text message from yet another USHealth agent. The text message was sent from 813-

474-8061 and it states,

"Hey ! This is Korelle! I'm trying to disposition your file for your health coverage request. Since I have not heard anything due to you getting bombarded or being busy I haven't closed it yet. I'd like to make this process as easy as possible for you. Should I close your file out or run a quote for you?"



82.     The last text message that Plaintiff received from, or on behalf of USHealth came on November 27, 2018 at 10:29 AM from US Health's agent Destiny Granger.[21] The unsolicited text message was sent from 813-405-7561 and it states,

"Hey Jean, I didn't want to call again in case you were busy. My name is Destiny Granger, I'm a licensed health insurance advisor. I was assigned to you follow up and make sure you are presented with the best plan options available to you this. This is including Health based PPO plans that if you qualify for could save you a ton of money while providing better benefits with a $0 deductible.Should I send quotes for just you, or for you and your family?"

---

[21] https://www.linkedin.com/in/destiny-granger-292016173/



83.      Pershwitz does not have a relationship with USHealth, has never provided his telephone number directly to USHealth, or requested that USHealth send text messages to him or offer him its services.

84.      He is not familiar with anyone named Jean, the name referenced in the text messages he received. In addition, the contact information referenced by some of the USHealth agents in the text messages does not match the contact information of Plaintiff Pershwitz.

85.      Simply put, Pershwitz has never provided his prior express written consent to USHealth to place calls and/or send text messages to him and he has no business relationship with Defendant.

86.      The unauthorized telephone calls made by USHealth, as alleged herein, have harmed Plaintiff Ford and Plaintiff Pershwitz in the form of annoyance, nuisance, and invasion of privacy, and disturbed Ford and Pershwitz' use and enjoyment of their phones, in addition to the wear and tear on the phones' hardware (including the phones' batteries) and the consumption of memory on the phones.

87.     In addition, both Ford and Pershwitz suffered great frustration over the fact that they both made attempts to stop the calls and text messages, but they were both unsuccessful in getting the calls and text messages stopped.

88.     Seeking redress for these injuries, Ford and Pershwitz, on behalf of themselves and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed telephone calls to cellular telephones, and unsolicited calls to phone numbers registered with the DNC.

## CLASS ALLEGATIONS

**Class Treatment Is Appropriate for Plaintiffs' TCPA Claims Arising From Calls Made by USHealth Agents**

89.     Plaintiff Ford and Plaintiff Pershwitz bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and all others similarly situated and seek certification of the following Classes:

> <u>**Prerecorded No Consent Class:**</u> All persons in the United States who from four years prior to the filing of this action through the present (1) Defendant (or an agency acting on behalf of Defendant) called (2) using a prerecorded voice message, and (3) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call Plaintiffs, or (b) they did not obtain prior express written consent.

> <u>**Autodialed No Consent Class:**</u> All persons in the United States who from four years prior to the filing of this action through the present (1) Defendant (or an agent acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using an autodialer, and (4) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call the Plaintiffs, or (b) Defendant did not obtain prior express written consent.

> <u>**Autodialed Stop Class**</u>: All persons in the United States who from four years prior to the filing of this action through the present: (1) Defendant (or an agency acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using an automatic telephone dialing system, (4) after the person informed Defendant that s/he no longer wished to receive phone calls from Defendant.

> <u>**Do Not Call Registry Class**</u>: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf

of Defendant) called/texted more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call/text Plaintiff Pershwitz, or (b) Defendant did not obtain prior express written consent.

**Do Not Call Registry Stop Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf of Defendant) called/texted more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant called after having been informed to stop calling.

**Internal DNC Class**: All persons in the United States who from four years prior to the filing of this action (1) one of Defendant's agents called more than one time (2) within any 12-month period, (3) for substantially the same reason Defendants' agents called Plaintiff.

90.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff's anticipate the need to amend the Class definitions following appropriate discovery.

91.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

92.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff's and the Classes, and those questions predominate over any

Case 3:02-at-06000   Document 44   Filed 06/25/19   Page 26 of 36

questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)  Whether Defendant placed calls to Plaintiff Pershwitz and members of the Class using a prerecorded voice message;

    (b)  whether Defendant utilized an automatic telephone dialing system to make its calls and send its text messages to Plaintiffs and the members of the Class;

    (c)  whether Defendant made autodialed telephone calls and sent autodialed text messages to the Plaintiffs and members of the Class without first obtaining prior express written consent to make the calls/send the texts;

    (d)  whether Defendant placed solicitation calls to the Plaintiffs and members of the Class despite the fact that Defendant was placing calls to phone numbers protected by the DNC;

    (e)  whether Defendant continued to place solicitation calls and/or send solicitation text messages to the Plaintiffs and members of the Class, despite requests for the calls/texts to stop;

    (f)  whether Defendant's conduct constitutes a violation of the TCPA; and

    (g)  whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

93.    **Adequate Representation**: Plaintiff's will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff's have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to either Plaintiff. Plaintiff's and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither of the Plaintiff's nor their counsel have any interest adverse to the Classes.

94.    **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes

uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to either Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Pershwitz and the Prerecorded No Consent Class)**

95.     Plaintiff Pershwitz repeats and realleges paragraphs 1 through 94 of this Complaint and incorporates them by reference.

96.     Defendant and/or its agents transmitted unwanted solicitation telephone calls to Plaintiff Pershwitz and the other members of the Prerecorded No Consent Class using a prerecorded voice message.

97.     These prerecorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Pershwitz and the other members of the Prerecorded No Consent Class.

98.     Defendant has, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B). As a result of Defendant's conduct, Plaintiff Pershwitz and the other members of the Prerecorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## SECOND CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Ford, Plaintiff Pershwitz and the Autodialed No Consent Class)**

99.     Plaintiffs repeats and reallege paragraphs 1 through 94 of this Complaint and incorporate them by reference herein.

100.     Defendant and/or its agents made unwanted solicitation telephone calls and sent unwanted solicitation text messages to cellular telephone numbers belonging to Plaintiff Ford, Plaintiff Pershwitz and the other members of the Autodialed No Consent Class using an autodialer.

101.     These solicitation telephone calls and solicitation text messages were made *en masse* without the consent of Plaintiff Ford, Plaintiff Pershwitz and the other members of the Autodialed No Consent Class to receive such solicitation telephone calls and solicitation text messages.

102.     Defendant did not have consent from either Plaintiff Ford, or Plaintiff Pershwitz orally or in writing to call or text either one of them.

103.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Ford, Plaintiff Pershwitz and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

104.     In the event that the Court determines that Defendant's conduct was wilful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff Ford, Plaintiff Pershwitz and the other members of the Autodialed No Consent Class.

## THIRD CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**

**(On Behalf of Plaintiff Ford, Plaintiff Pershwitz and the Autodialed Stop Class)**

105.     Plaintiff Ford and Plaintiff Pershwitz repeat and reallege paragraphs 1 through 94 of this Complaint and incorporate them by reference.

106.     Defendant and/or its agents made unwanted solicitation telephone calls and sent unwanted solicitation text messages to cellular telephone numbers belonging to Plaintiff Ford, Plaintiff Pershwitz and the other members of the Autodialed Stop Class after being told to stop calling/texting.

107.     These solicitation telephone calls and text messages were made *en masse* and/or sent without human intervention.

108.     Defendant has, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (c)(5). As a result of Defendant's conduct, Plaintiff Ford, Plaintiff Pershwitz and the other members of the Autodialed Stop Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### FOURTH CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Ford, Plaintiff Pershwitz and the Do Not Call Registry Class)**

109.     Plaintiff Ford and Plaintiff Pershwitz repeat and reallege the paragraphs 1 through 94 of this Complaint and incorporate them by reference herein.

110.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

111.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[22]

112.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

113.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

114.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Ford, Plaintiff Pershwitz and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

115.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Ford, Plaintiff Pershwitz and the Do Not Call Registry Class received more than one call and/or text message in a 12-month period sent by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff Ford, Plaintiff Pershwitz and the Do Not Call Registry Class suffered actual damages and, under section 47

---

[22] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

116.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**FIFTH CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Ford, Plaintiff Pershwitz and the Do Not Call Registry Stop Class)**

117.     Plaintiff Ford and Plaintiff Pershwitz repeat and reallege the paragraphs 1 through 94 of this Complaint and incorporate them by reference herein.

118.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

119.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[23]

120.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

---

[23] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

121.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

122.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Ford, Plaintiff Pershwitz and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

123.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Ford, Plaintiff Pershwitz and the Do Not Call Registry Class received more than one call and/or text message in a 12-month period sent by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above *after already informing Defendant to stop the calls*. As a result of Defendant's conduct as alleged herein, Plaintiff Ford, Plaintiff Pershwitz and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

124.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SIXTH CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of the Plaintiffs and the Internal Do Not Call Class)**

125.     Plaintiffs repeats and realleges paragraphs 1 through 94 of this Complaint and incorporates them by reference.

126.     Under 47 C.F.R. § 64.1200(d):  No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d).

127.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

128.    Defendants' agents initiated telephone solicitations to Plaintiff and members of the Internal DNC Class notwithstanding Defendants and their agent's failure to implement internal procedures for maintaining a list of persons who request not to be called and/or by implementing procedures that do not meet the minimum standards for initiating telemarketing calls.

129.    Defendants are vicariously liable for their agents calls because they directed and/or ratified the agent's actions.

130.    Defendants have, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call class are each entitled to up to $1,500 for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff's, individually and on behalf of the Classes, pray for the

34

following relief:

a) An order certifying the Classes as defined above; appointing Plaintiff's as the representatives of the Classes; and appointing their attorneys as Class Counsel;

b) An award of actual and/or statutory damages to be paid into a common fund for the benefit of Plaintiff's and the Classes;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

e) An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of their unlawful telephone calling practices;

f) An injunction requiring Defendant to cease all unsolicited calling/texting activity, to implement sufficient TCPA related policies and procedures, and to otherwise protect the interests of the Class; and

g) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**JOSEPH FORD JR.**, individually, **EDWARD PERSHWITZ**, individually and on behalf of those similarly situated individuals

Dated: June 25, 2019                    By: __/s/ Stefan Coleman_

Stefan Coleman*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427

Facsimile: (888) 498-8946

*Attorney for Plaintiff and the putative Class*

*\*Pro Hac Vice motion forthcoming*