**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSEPH FORD JR.** and **EDWARD PERSHWITZ,** individually, and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>**USHEALTH ADVISORS, LLC, AND USHEALTH GROUP, INC.,**<br><br>*Defendants.* | Case No. 3:19-CV-01091-ARC<br><br>**DEMAND FOR JURY TRIAL** |

**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Joseph Ford Jr. ("Ford") and Edward Pershwitz ("Pershwitz") (collectively, "Plaintiffs") bring this Amended Class Action Complaint and Demand for Jury Trial on behalf of themselves and all others similarly situated against Defendants USHealth Advisors, LLC ("UHA") and USHealth Group, Inc. ("UHG") (collectively, "Defendants"), under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), as a result of Defendants' harassing, unsolicited, prerecorded and autodialed telemarketing calls and text messages disseminated to consumers nationwide without their consent, including unsolicited calls made to phone numbers registered on the National Do Not Call registry ("DNC Registry"), and to those who have expressly requested that the calls stop. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## I. INTRODUCTION

1. UHG sells health products such as indemnity plans and supplementary products to consumers that are underwritten by The Freedom Life Insurance Company of America.

2. UHA is the "marketing arm of [UHG] and specializes in marketing a portfolio of uncompromising health coverage plans underwritten and insured by [UHG]'s family of insurance companies."[1] UHA is a wholly owned national sales and distribution subsidiary of UHG.[2] Agents working on behalf of UHG either identify as UHG or UHA employees/agents/representatives, and sell indemnity plans and other affiliated products to consumers.

3. UHG uses its wholly owned "marketing arm," UHA, to generate leads on its behalf. Upon information and belief, as part of this business structure, UHA provides its own agents with a dialer system, as well as leads for the agents to contact, many of which are bad leads that they have no consent to contact in the first place.

4. UHA, on behalf of UHG, solicits business from consumers using prerecorded calls, autodialed calls and autodialed text messages. Unfortunately, many of these calls and texts are being placed without clear and conspicuous express written consent from the call recipients, in violation of the TCPA, and/or are made to consumers registered on the National Do Not Call list.

5. Even worse, when UHA (on behalf of UHG) provides leads to its own agents, it appears that multiple UHA agents have access to the same lead, which results in multiple agents soliciting that particular lead. This issue causes consumers to receive multiple solicitations from multiple UHA agents, even when they have informed previous agents to stop calling or texting them.

---

[1] http://www.ushealthgroup.com/BecomeAnAgent.aspx (last visited Aug. 30, 2019).
[2] https://www.linkedin.com/company/ushealth-advisors/ (last visited Aug. 30, 2019).

6. With respect to Ford, for example, UHA agents (on behalf of UHG) placed multiple autodialed calls and text messages to his cellular phone, despite his multiple requests to stop.

7. With respect to Pershwitz, UHA agents (on behalf of UHG) sent multiple autodialed text messages and at least two prerecorded calls to his cellular phone despite Pershwitz informing them that they had the wrong phone number and to stop contacting him.

8. Both of the Plaintiffs had their cellular phone numbers registered with the DNC Registry at least 30 days prior to receiving any calls or texts from the Defendants.

9. As a result of these calls and text massages, Ford and Pershwitz have been injured and, therefore, bring this action to obtain injunctive relief requiring Defendants to cease violating—and/or directing its agents to violate—the TCPA, as well as an award of statutory and other damages to the members of the Classes and costs.

## II. PARTIES

10. Ford is a citizen of Pennsylvania, and maintains a cell phone whose area code is 570, a Pennsylvania area code.

11. Pershwitz is a citizen of Texas.

12. UHG is a corporation organized under the laws of Delaware that maintains its principal place of business at 300 Burnet Street, Suite 200, Fort Worth, Texas 76102. It operates, or otherwise holds itself out, as an insurance holding company that purportedly provides innovative health coverage for self-employed individuals and small business owners. UHG uses its wholly-owned subsidiary, UHA, as its “marketing arm” to market, solicit, and/or sell insurance underwritten by its other wholly-owned subsidiaries, Freedom Life Insurance Company of America and National Foundation Life Insurance Company.

13. UHA is a Texas limited liability company that is wholly-owned by its parent company UHG and headquartered at the same location as UHG, 300 Burnet Street, Suite 200, Fort Worth, Texas 76102. UHA acts as the "marketing arm" for UHG and sells individual health coverage and supplementary products underwritten by The Freedom Life Insurance Company of America and National Foundation Life Insurance Company.

14. Throughout this Complaint, any instance where it is alleged that UHA and/or UHG committed any act or omission, it is meant that both Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees, or, alternatively, that Defendants knew of such act or omission, but did nothing in response thereto.

## III. JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under a United States federal statute, the TCPA, which specifically authorizes this Court to exercise subject matter jurisdiction over this matter. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs seek up to $1,500 in damages for each phone call in violation of the TCPA, which, when aggregated among a proposed class number of more than five thousand, exceeds the $5,000,000 threshold for federal court jurisdiction. Further, Plaintiffs allege a national class, which will result in at least one class member belonging to a different state than that of Defendants, providing jurisdiction under 28 U.S.C. § 1332(d)(2)(A).

16. This Court has personal jurisdiction over Defendants UHA and UHG and venue is proper in this District under 28 U.S.C. § 1391(b) because they each conduct significant business

in this District and the Commonwealth of Pennsylvania, and because the wrongful conduct giving rise to this case occurred at, or was directed to this District.

17. Specifically, UHA has employees and/or agents in Pennsylvania and operates a sales team in Pennsylvania through the USHealth Higgins Division.[3]

18. In addition, UHA regularly employs agents who work from Pennsylvania. For instance, the Utah Insurance Department's agent search provides that the following agents work for UHA within Pennsylvania: Allyson Temyer from Pittsburgh, PA, Willy Ruiz from Kennett Square, PA, Margaret Michael from Glenside, PA, and Venera Demiri from Harrisburg, PA, to name just a few. Furthermore, UHG's website provides that James Higgins and Sal Spedale are agents that work in Doylestown, Pennyslvania[4], and Jeffery Christofferson is an agent who works in Pittsburgh, Pennsylvania.[5]

19. Additionally, UHA recently published a job posting seeking a "Telemarketers & Customer Service Reps" in Erie, Pennsylvania:[6]




20. As further evidence that Defendants maintain agents and business operations in Pennsylvania, another job posting for "Telephone Sales Representative" in Philadelphia,

---

[3] https://www.glassdoor.com/job-listing/licensed-life-and-health-insurance-agent-ushealth-higgins-division-JV_IC1152672_KO0,40_KE41,66.htm?jl=3314762382&ctt=1566829499788 (last visited Aug. 30, 2019).

[4] http://www.ushealthgroup.com/FindAnAgent.aspx?zip=18210 (last visited Aug. 30, 2019).

[5] http://www.ushealthgroup.com/FindAnAgent.aspx?zip=15228 (last visited Aug. 30, 2019).

[6] https://www.glassdoor.com/job-listing/telemarketers-customer-service-reps-make-awesome-advisors-65k-ushealth-advisors-laughlin-region-JV_IC1152139_KO0,61_KE62,95.htm?jl=3321965243&ctt=1566829215291 (last visited Aug. 30, 2019) (emphasis added).

Pennsylvania lists the job description as: "We are currently seeking to hire Sales Agents to join our Pennsylvania team!"[7]

21. UHA has multiple job postings seeking employees in Pennsylvania, including but not limited to an "Entry Level Account Manager" in Levittown, PA, "Account Executive" in Harrisburg, Pittsburgh, and Bethlehem, Pennsylvania[8], as well as "Insurance Sales Manager" in York[9] and Pittsburgh, Pennsylvania.[10]

22. UHA also regularly makes phone calls and sends text messages to consumers in this District. Specifically, multiple UHA agents contacted Ford, who, as noted above, lives in this District and maintains a phone with a Pennsylvania area code.

23. Furthermore, UHA is listed on the business directory of the Greater Leigh Valley Chamber of Commerce in Pennsylvania.[11]

24. As alleged above and throughout the paragraphs that follow, UHG is UHA's parent company. UHA acted on UHG's behalf and/or at its direction when engaging in the conduct alleged within Pennsylvania giving rise to Plaintiffs' claims. Thus, UHG has the necessary contacts with this District by way of the acts UHA conducts on UHG's behalf and/or

---

[7] https://www.glassdoor.com/job-listing/telephone-sales-representative-ushealth-higgins-division-JV_IC1152672_KO0,30_KE31,56.htm?jl=3268979024&ctt=1566829489000 (last visited Aug. 30, 2019).
[8] https://www.glassdoor.com/Job/jobs.htm?suggestCount=0&suggestChosen=false&clickSource=searchBtn&typedKeyword=USHealth&sc.keyword=USHealth&locT=S&locId=3185&jobType (last visited Aug. 30, 2019).
[9] https://www.glassdoor.com/job-listing/insurance-benefits-sales-manager-ushealth-advisors-bmg-yk-JV_IC1153468_KO0,32_KE33,57.htm?jl=3324535450&ctt=1566829501326 (last visited Aug. 30, 2019).
[10] https://www.glassdoor.com/job-listing/insurance-benefits-sales-manager-ushealth-advisors-bgm-pt-JV_IC1152990_KO0,32_KE33,57.htm?jl=3313120509&ctt=1566829502824 (last visited Aug. 30, 2019).
[11] https://lehighvalleypacoc.wliinc16.com/Insurance/US-Health-Advisors-14714 (last visited Aug. 30, 2019).

at its direction within this District, namely, using UHA as UHG's "marketing arm" to solicit business in this District and to regularly employ agents in this District.

25. On information and belief, UHG enters into contracts with consumers in this District as it markets its products nationally including in Pennsylvania.

## IV. COMMON ALLEGATIONS

### A. The TCPA and Relevant Implementing Regulations

26. The TCPA was enacted to thwart harassing and annoying telemarketing calls and text messages that virtually all telephone owners deal with on an unfortunately regular basis. Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy…." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

27. It is a violation of the TCPA to make

> any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service ….

47 U.S.C. § 227(b)(1)(A)(iii).

28. Prior express written consent is defined as follows:

> an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(8).

29. Under the TCPA, text messages are considered telephone calls. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket 02-0278, Report and Order, 18 FCC Rcd. 14014, 14115 para. 165 (July 3, 2003).

30. Furthermore, as of October 16, 2013, unless the recipient has given prior express written consent, the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally prohibit certain calls to members of the DNC Registry.

31. The TCPA, and federal regulations implementing it, prohibit the initiation of telephone solicitations to telephone subscribers listed in the DNC Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

32. The DNC Registry allows consumers to register their residential landline and cellular telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2) & (e).

33. A call-recipient's request to be placed on the DNC Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

34. The TCPA and its implementing regulations also establish a requirement that all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC List"). 47 C.F.R. § 64.1200(d). The IDNC List is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]." *Id.* The TCPA prohibits a company from calling individuals on its IDNC List, or on the IDNC List of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the DNC Registry. *Id.* at §§ 64.1200(d)(3),(6). Any company who calls a member of the IDNC List violates the TCPA, and the call-recipient may bring a private action under the TCPA for monetary and injunctive relief. Furthermore, if a third-party makes calls to individuals listed on a company's IDNC List, on behalf of that company, the company is liable for violations of the TCPA stemming from such calls made on its behalf by third-parties.

35. Furthermore, the FCC has held that “while a seller does not generally initiate calls made through a third-party telemarketer, it nonetheless may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services. *See Petition Filed by DISH Network, LLC for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules*, CG Docket No. 11-50, para., 28 FCC Rcd 6574, 6584, para. 28 May 9, 2013); *See also Campbell-Ewald Co. v. Ewald*, 136 S.Ct. 663, 673 (2016).

36. Accordingly, an entity may be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity that directly placed the call.

37. Also, companies are liable for the acts of its agent(s) where the agent(s) has been authorized to make representations on behalf of the company and/or acts as an express or apparent agent:

> Apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller’s exclusive control, including: access to detailed information regarding the nature and pricing of the seller’s products and services or to the seller’s customer information. The ability by the outside sales entity to enter consumer information into the seller’s sales or customer systems, as well as the authority to use the seller’s trade name, trademark and service mark may also be relevant. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller’s behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller’s behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Dish Network*, at para. 46.

38. Consumers who receive more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the TCPA and/or the federal regulations implementing it are entitled to receive damages in the amount of $500 per call against the entity

that made the calls or had the calls made on its behalf. 47 U.S.C. § 227(b)(3)(B). Such damages may be trebled for will full violations. 47 U.S.C. § 227(c)(5).

**B. The Relationship Between UHA and UHG**

39. Defendants operate a health insurance services business that purportedly offers insurance products to individuals and others. According to UHG's website, "our insurance companies offer you the ability to buy more coverage if and when you need it, this means you can pay for less coverage under your base plan."[12] UHG offers plans for vision, dental, life insurance, excess medical expense coverage, and disability insurance.

40. Defendants market this business, UHG uses UHA—its wholly owned subsidiary and "marketing arm" consisting of approximately 3,500 telemarketing agents nationwide—to make prerecorded and/or autodialed telephone calls, and send test messages, to consumers based on "leads" purchased by Defendants.

41. Defendants obtained these "leads" (i.e., telephone numbers) by buying lists of consumers' telephone numbers through third-party vendors including but not limited to Quote Wizard, Nace, Prospect America, Lead Hustler, and Telephone Marketing Services. UHA pays agents in cash or shared of UHG's stock for signing up new consumers for Defendants' health insurance products.

42. Upon information and belief, UHG created UHA to shield UHG from liability stemming from acts of its "marketing arm," UHA, which primarily consist of telemarketing to drum up business for UHG.

43. UHG has also, on information and belief, set up UHA to deliberately label UHA agents as "independent contractors" to further distance itself from the telemarketing activities that it directs and benefits from.

[12] https://www.ushealthgroup.com/ (last visited Aug. 30, 2019).

44. The agents Defendants employ to make calls and texts on their behalf are Defendants' legal "agents," as defined in law, because, upon information and belief:

a. Defendants contract with the agents, in writing, for them to make telemarketing calls and text messages on Defendants' behalf, in order to market and sell Defendants' insurance products;

b. Defendants compensate the agents when they succeed in calling consumers and selling them Defendants' insurance products;

c. Defendants give the agents permission to use UHG's and/or UHA's logos, trademarks, proprietary information, and other business markings when interacting with consumers on Defendants' behalf;

d. Defendants grant the agents access to their business systems, pricing information, and other proprietary business information that is not publicly available;

e. Defendants provide the agents with "leads" (i.e., telephone numbers) and direct the agents to call/text message those leads on Defendants' behalf;

f. Defendants provide the agents with software (i.e., VanillaSoft)—that has autodialing and prerecorded message functionality—which it directs the agents to use to send calls and text messages to consumers on Defendants' behalf; and/or

g. The agents are able to enter consumers' information gathered during the calls/text messages directly into Defendants' business systems.

45. UHG provides UHA agents exclusive access to UHG plans and pricing through UHG's website under the Agent's tab shown below:




46. UHA agents are so interconnected with UHG that the UHA agents often publicize themselves as working for UHG. For instance, James Richard White who works for UHA

publicizes his email as davisk@USHealthGroup.com[13], while other agents use their USHAdvisors.com email address.[14]

47. On the below slide published by UHG, it states that "[UHG] has increased its number of selling agents by 30% year over year." This implies that UHG employs selling agents, when in reality its agents are UHA's agents. This shows the interoperability of these two entities, truly functioning as one even expressed within their own corporation.



[15]

48. As depicted in the image below from UHG's website, UHA is the dominant source of leads for UHG: "Following 6 years of stagnant growth, the UHG share price has grown exponentially between 2010 and 2017, driven by the sales success of UHA":

---

[13] https://secure.utah.gov/agent-search/agentDetails.html?agent=jWpzaeDBL1 (last visited Aug. 30, 2019).
[14] https://secure.utah.gov/agent-search/agentDetails.html?agent=kEpbLV3JQM (last visited Aug. 30, 2019).
[15] https://stevieawards.com/aba/ushealth-advisors-0 (last visited Aug. 30, 2019) (emphasis added).



[16]

49. UHA's website, USHACareers.com, is copyrighted by UHG and is listed as the Contact Us on their Privacy Policy as www.USHealthGroup.com.

50. UHA's sole function is to generate sales for UHG, and UHA engages in its telephone and text message marketing efforts at the direction of UGH and solely on its behalf. As such, UHG should not be shielded from liability by creating a separate entity as its marketing arm to solicit the calls on its behalf and for its benefit. Indeed, the Federal Communications Commission ("FCC") has specifically explained that "while a seller does not generally initiate calls made through a third-party telemarketer, it nonetheless may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) of the TCPA committed by telemarketers that initiate calls to market its products or services."[17]

---

[16] https://stevieawards.com/aba/ushealth-advisors-0 (last visited Aug. 30, 2019).
[17] Petition Filed by DISH Network, LLC for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, CG Docket No. 11-50, para., 28 FCC Rcd 6574, 6584, para. 28 May 9, 2013); *See also Campbell-Ewald Co. v. Ewald*, 136 S.Ct. 663, 673 (2016).

51. Accordingly, it is axiomatic that UHG is liable under the TCPA for calls and text messages that UHA made on UHG's behalf even if UHG did not directly place the call. Under the clear guidance of the FCC, UHG is deemed to have initiated the calls/text messages through the person or entity that directly placed the call: UHA.

52. UHA designates its agents as "independent contractors." This should not absolve it of liability of their actions though as UHA trains its independent contracts and provides them with scripts to use, leads to call/text message, and a dialer system to call and track them on.

53. UHA treats their agents like employees, as admitted by several UHA agents:

- "You're a 1099, but treated like an employee and punished if you don't do what the managers tell you to do. I'm not sure how the insurance industry can get away with having such a large contracted labor workforce. It seems wrong."[18]

- "They saw you are an independent contractor but in all actuality you should be an employee because you have a team leader who you report to. Threats are made if you don't attend their wasteful meeting that your contract will be terminated."[19]

- "I was told this was a career agency and I could not work for any other insurance carrier as they wanted all my attention on selling their products. I have worked in career agencies before. It is usually a W-2 position and there are benefits offered. This company paying on a 1099 like every other company, which makes you self employed. I agreed to there terms. The down side was that my appointments with all my General Agencies and life companies would have to be terminated. I agreed and letters were sent on my behalf to terminate my contracts."[20]

- "will simply remind you that you are in fact a 1099 contractor."[21]

54. Furthermore, at all times relevant hereto, UHA was acting as UHG's agent when placing the calls, and sending the text messages, underlying Plaintiffs' claims. UHA had UHG's

---

[18] https://www.glassdoor.com/Reviews/USHEALTH-Advisors-Reviews-E594268_P7.htm (last visited Aug. 30, 2019).

[19] https://www.glassdoor.com/Reviews/Employee-Review-USHEALTH-Group-RVW22552988.htm (last visited Aug. 30, 2019).

[20] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066_P13.htm (last visited Aug. 30, 2019)

[21] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066_P2.htm (last visited Aug. 30, 2019).

actual or apparent authority to place calls and send text messages on UHG's behalf. Thus, UHG is liable for the acts of UHA because UHA had authority to make representations on UHG's behalf, and acts as an express or apparent agent of UHG. Upon information and belief, UGH provides UHA access to its multiple health products, plans, and pricing structure through its proprietary login and access. Thus, UHA had access to UHG's information and systems, detailed information regarding the nature and pricing of the UHG's products and services, and UHG's customer information. Additionally, upon information and belief, UHA had the ability to enter consumer information into UHG's sales or customer systems, as well as the authority to use UHG's trade name, trademark and service mark.

55. To the extent UHA's conduct underlying Plaintiffs' claims was not authorized by UHG, UHG is nonetheless liable for such conduct because UHG knew (or reasonably should have known) that UHA was violating the TCPA on UHG's behalf and UHG failed to take effective steps within its power to force UHA to cease that conduct.

### C. Defendants Direct Their Agents to Cold Call/Text Consumers Without Consent

56. As explained by the FCC in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines."[22]

57. In violation of this rule, Defendants fail to obtain any express written consent prior to making autodialed and pre-recorded solicitation calls and texts, including to phone number registered on the national Do Not Call registry. In fact, on information and belief, Defendants purchase leads from lead vendors and provide them to the UHA agents directly and instruct them to call those leads.

---

[22] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

58. As stated in a recent UHA job posting, UHA provides the following to its agents "FREE LEADS (EXCLUSIVE, SHARED, TELEMARKETED, LIVE TRANSFERS, LISTS, ETC…)":[23]




59. A UHG Senior Vice President admits that "UHA invests heavily, in order to provide leads to our agents. That said, lead quality certainly varies from one vendor to another. I encourage you and your leadership team to investigate other lead sources that may work better for you."[24]

---

[23] https://www.linkedin.com/jobs/view/sales-representative-insurance-at-ushealth-advisors-1391212992/ (last visited Aug. 30, 2019) (emphasis added).
[24] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066_P2.htm (last visited Aug. 30, 2019).

60. The quality of the leads UHG provides to UHA, or vice versa, is questionable inasmuch as both Ford and Pershwitz received text messages directed at people whose names did not match "Ford" or "Pershwitz" in the slightest.

61. Many former UHA agents have posted about how they are directed by UHA to pay $100 per month for "company provided leads":

- You pay $100 per month for the "company provided leads." You have to make 400 dials a day on average to make a sale, and most the leads are angry people who are sick of their phone being blown up. You better be able to handle being screamed and cussed at![25]

- They say your leads are free but you actually pay $100 a month for the system that allows you to access them so in reality, not free. [26]

- The leads that are given to you are old, like some are from months ago and a few are even into 1 year plus old. Otherwise, you are cold calling like a mad person hoping that just 1 person will give you the time of day.[27]

62. Agents are required to pay hundreds of dollars to get an insurance license and also have to pay a $95 monthly fee to use the telemarketing system that provides them with consumers' phone numbers who Defendants direct the agents to call.[28] Indeed, many former UHA agents have reported that the job is to "cold call" leads:

- "It is all cold calling and when you do sell a plan your supervisor robs you in commission. The salary in the description is bs."[29]

- "You get to sit on the phone for 8-12 hrs a day calling hundreds of people who are not interested, have already had 20 calls that day, or already have insurance. …The leads are old and have been bombarded. They say your leads are

---

[25] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066_P2.htm (last visited Aug. 30, 2019).
[26] https://www.glassdoor.com/Reviews/USHEALTH-Advisors-Reviews-E594268_P7.htm (last vsited Aug. 30, 2019).
[27] https://www.glassdoor.com/Reviews/USHEALTH-Advisors-Reviews-E594268_P7.htm (last visited Aug. 30, 2019).
[28] https://www.glassdoor.com/Reviews/USHEALTH-Advisors-Reviews-E594268_P7.htm (last visited Aug. 30, 2019).
[29] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066.htm (last visited Aug. 30, 2019).

free but you actually pay $100 a month for the system that allows you to access them so in reality, not free."[30]

- Don't believe the whole, "you don't have to make cold calls, leads are provided" schpiel that they give you. You can buy your own leads at $20+ a lead and they will reimburse you, if and only if you produce sales from them, so if you buy your own leads and they don't lead to sales, you eat the cost. The leads that are given to you are old, like some are from months ago and a few are even into 1 year plus old. Otherwise, you are cold calling like a mad person hoping that just 1 person will give you the time of day.[31]

- "its 100 percent cold calling."[32]

- "The leads are old and have been bombarded. They say your leads are free but you actually pay $100 a month for the system that allows you to access them so in reality, not free."[33]

- "To summarize, you may be promised to be calling on warm leads but these are cold and sometimes literally dead leads and you may only be given a handful of leads to call on while other agents receive many more."[34]

- "When training was complete I was assigned leads in the states I was licensed in and told that I needed to dial between 200 to 300 dials a day to get the necessary appointments needed to get some cases sold."[35]

### D. Defendants Direct Their Agents to Market Their Services Using a Dialer System Provided By UHA

63. UHA provides its agents with leads and directs its agents to solicit business from those leads using an autodialer sytem provided by UHA.

---

[30] https://www.glassdoor.com/Reviews/Employee-Review-USHEALTH-Advisors-RVW27596154.htm (last visited Aug. 30, 2019).
[31] https://www.glassdoor.sg/Reviews/Employee-Review-USHEALTH-Advisors-RVW27518258.htm (last visited Aug. 30, 2019).
[32] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066_P2.htm (last visited Aug. 30, 2019).
[33] https://www.glassdoor.com/Reviews/USHEALTH-Advisors-Insurance-Agent-Reviews-EI_IE594268.0,17_KO18,33.htm (last visited Aug. 30, 2019).
[34] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066_P3.htm (last visited Aug. 30, 2019).
[35] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066_P13.htm (last visited Aug. 30, 2019).

64. One UHA agent stated on Glassdoor that he had to purchase an "$85.00 a month subscription to an auto dialer service that [UHA] use so they could track [his] activity daily and [he] could call their leads."[36]

65. Another agent commented on Glassdoor that UHA is "very proud of their dialer system that provides potential leads, however it requires hours of 'dialing' to possibly reach a few people that may be interested in hearing about what they offer."[37]

66. UHA places very high demands upon its sales agents, specifically requiring them to make hundreds of calls per day.

67. For example, on UHA's Glassdoor reviews, multiple employees have posted about the number of calls they are required to place each day:

> When training was complete I was assigned leads in the states I was licensed in and told that I needed to dial between 200 to 300 dials a day to get the necessary appointments needed to get some cases sold. I was told that any presentations my manager did for me

[38]

While another states on Indeed.com:

> I was let go from here because I didn't write an application in a certain time period, and they just cut you off from your agent portal and do not let you know it is going to happen. It is a commission only job, so I was not sure why they would, since they don't pay me a salary. The company expects you to make around 300 phone calls a day, but some people aren't cut out for that, and then you have to go make some business yourself, so you are out on your own.

[39]

---

[36] https://www.glassdoor.com/Reviews/Employee-Review-USHEALTH-Group-RVW11742421.htm (last visited Aug. 30, 2019).

[37] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066.htm?sort.sortType=RD&sort.ascending=false&filter.employmentStatus=REGULAR&filter.employmentStatus=PART_TIME&filter.employmentStatus=UNKNOWN (last visited Aug. 30, 2019)

[38] https://www.glassdoor.com/Reviews/Employee-Review-USHEALTH-Group-RVW11742421.htm (last visited Aug. 30, 2019) (emphasis added).

39 https://www.indeed.com/cmp/Ushealth-Group/reviews (last visited Aug. 30, 2019) (emphasis

### 1. *Defendants use Auto-Dialing Software Called VanillaSoft to Place Harrassing Calls to Plaintiffs and the Class members*

68. On information and belief, the autodialer service that UHA provides to its staff is called VanillaSoft.

69. In training videos that VanillaSoft posted on Youtube, the company explains how the autodialer system works, showing that it automatically generates potential consumer profiles (including telephone numbers) and then automatically dials the consumer's phone number.[40]

70. The VanillaSoft instructor provides a training video for UHA agents and states during the video: "What we are all hear for dialing, making calls…Let's talk about your softphone, this is VS Connect, so as part of your package with Vanilla Soft as part of our deal with USHealth corporation, one of the items you get is a free VOIP line."[41] A VOIP line is a phone service that allows the user to place calls using a computer and broadband internet connection.

71. The instructor in the above video explains further that the software used by Defendants offers: "2 main flavors of dialing: one is preview dialing, which is click to call, the other option is progressive dial and that's more like a power dialer…you will typically be on progressive."[42] The instructor explains further: "There are two delicious flavors of dialing available through this system …. The other flavor is a progressive autodial, it's much more efficient…I think virtually every division is using the progressive autodial."[43]

---

added).

[40] https://www.youtube.com/watch?v=96XPolmJx1c (last visited Aug. 30, 2019).

[41] https://www.youtube.com/watch?v=96XPolmJx1c (watch around the fourteenth minute of the video) (last visited Aug. 30, 2019).

[42] *Id.*(last visited Aug. 30, 2019).

[43] https://www.youtube.com/watch?v=sIsRzan9iD4 (watch around the twentieth minute of the video) (last visited Aug. 30, 2019).

72. In other words, based on instructions provided by the instructor in the video referenced above, Defendants' agents are instructed by Defendants to use the autodialer feature to place calls marketing UHG's business. The system VanillaSoft will automatically generate phone numbers and dial them without any human intervention.

73. Furthermore, each UHA agent is provided a VOIP line to make calls to consumers through VS Connect, Vanillas Soft's VOIP system. According to the trainer, the agents' phone number can be manipulated to be replaced with the same area code as the consumer the agent is calling.[44] This is, in effect, intentionally spoofing the agent's phone number so that the call recipient believes it is a call from a local, recognizable number, and also shields the agent from being called back by the call recipient. This added feature that prevents the call recipient from calling the agent's number back eliminates the call recipient's ability to determine what company called him/her. Indeed, this feature prevented Plaintiffs' counsel from investigating every call received by the Plaintiffs and identifying which UHA agent placed the calls to the Plaintiffs.

**2. *Defendants use VanillaSoft to Send Harrassing Text Messages to Plaintiffs and the Class members***

74. In 2017, VanillaSoft began offering UHA agents the ability to send text messages, including autodialed text messages to consumers:



[45]

[44] https://www.youtube.com/watch?v=sIsRzan9iD4 (watch around the eighteenth minute of the video) (last visited Aug. 30, 2019).
[45] https://www.vanillasoft.com/company/news-events/vanillasoft-now-offers-sms-text-feature-

75. In fact, VanillaSoft touted its SMS Text Feature with a special focus on automated (autodialed) texting:



[46]

76. As the VanillaSoft instructor stated in his training to the UHA "automatic [texting] is the same as email…as soon as I click on the result an automatic text is sent out…Check with your division manager…In all likelihood, if you are using text, there are automatic texts being tied there to make you even more efficient."[47] Specifically, the figure below is a screenshot from the VanillaSoft system used by Defendants, showing how it allows UHA agents to initiate an automatic text by clicking on a FollowUp Button, which sends an automatic text to the lead:

increase-lead-engagement-opportunities/ (last visited Aug. 30, 2019) (emphasis added).

[46] https://www.vanillasoft.com/product/features/e-mail-sms-marketing/ (last visited Aug. 30, 2019) (emphasis added).
[47] https://www.youtube.com/watch?v=sIsRzan9iD4 (last visited Aug. 30, 2019) (emphasis added).




*Figure 1: Screenshot of VanillaSoft system showing how UHA agent initiates an automatic text by clicking on a FollowUp Button initiating an automatic text to the lead.*

77. On information and belief, VanillaSoft's texting functionality works through the Pinger system which provides "Business Texting" to "Engage customers with an automated text anytime."

78. When Ford received an unsolicited text message from Defendants, he attempted to stop the receipt of Defendants' texts by replying with "Stop" to Defendants' agent(s), and received a notification from Pinger "To stop Pinger texts from 18135153873 reply STOP to confirm[.]" Ford replied immediately, "Stop[.]" Despite Ford sending yet another text message saying only "Stop," (for a third time), he still continued to receive text messages and calls from UHA agents.

79. The "To stop Pinger texts" message was automatically generated without any human intervention from Defendants.

### 3. *Defendants' Current and Former Employees Confirmed Through Multiple Internet Posts that Defendants use VanillaSoft to Send Consumers Illegal Calls and Text Messages*

80. Many former UHA agents have complained and admitted to using VanillaSoft to make telephone calls and send text messages to consumers on Defendants' behalf:

- They are very proud of their dialer system that provides potential leads, however it requires hours of *dialing* to possibly reach a few people that may be interested in hearing about what they offer. It helps greatly to use the dialing system IN ADDITION to contacting people in your immediate circle or cold calling on individuals and business owners. It may take you several months to make the income listed as a possibility.[48]

- I had to purchase an $85.00 a month subscription to an auto dialer service that they use so they could track my activity daily and I could call their leads.[49]

- I mentioned this to management and they felt that it was in my best interest to resign as I could not grasp these concepts after working a dialer for 8 weeks and not really speaking to anyone.[50]

81. UHA agents also get access to "VoiceDrop" in the VanillaSoft dialer system, which will send a pre-recorded message to the consumer's voicemail without any human intervention. The screenshot below depicts this functionality:




82. In placing the calls that form the basis of this Complaint, Defendants utilized an automatic telephone dialing system ("ATDS" or "autodialer") in violation of the TCPA.

---

[48] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066_P4.htm (last visited Aug. 30, 2019).
[49] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066_P13.htm (last visited Aug. 30, 2019).
[50] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066_P13.htm (last visited Aug. 30, 2019).

Specifically, the hardware and software used by Defendants, including but not limited to VanillaSoft, has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendants' automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

83. Similarly, in sending the unsolicited text messages at issue, Defendants and/or third-parties acting on their behalf, used an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be texted *en masse*. This is evident from the circumstances surrounding the text messages, including the ability to trigger an automated response by replying "STOP," as well as the generic, commercial content of the text messages and the fact that substantively identical texts were sent to multiple recipients. All of these factors indicate that Defendants use an automatic telephone dialing system to send text messages.

**E. Widespread Consumer Complaints Regarding Defendants Telemarketing Activities**

84. Based on the training, VanillaSoft autodialing software, and leads that UHA provides to its agents, it is not surprising to see that there are numerous complaints posted online about the unwanted calls and/or text messages that consumers have received. Some consumers complaint about the amount of calls, while others complain that they never gave consent to receive calls and text messages from Defendants and have no idea how Defendants obtained their phone numbers. This is just a small sampling of those complaints:

- "UHA makes calls soliciting business to people on the Do No Call Registry. I have received call after call from various people trying to inquire about whether I maintain

my own health insurance or not." The same consumer also wrote, "Every time I request to be removed from their call list (if the person doesn't hang up the minute I mention they have violated the Do Not Call Registry."[51]

- In response to the above complaint, another consumer wrote, "Same. Got my insurance but they keep calling. Today alone I've received 19 calls and 7 voicemails. It's not even 1pm. To say it's ridiculous is not even touching it. It's harassment."[52]

- Another consumer responded, "Well I certainly did not request anything and they are under the impression I am a 60 year old male and I am a 30 year old woman. I have told over 13 advisors this and they still harass me."[53]

- "This company has been calling nonstop for about 2 weeks now. I don't know where they got my name or number. I've asked dozens of times for them to stop calling." The same consumer also wrote "Sometimes they don't say anything at all."[54]

- "I am getting non stop calls from this company. I have asked to be removed from their mailing list and they wont take me off and call me 30times a day."[55]

- "I have been getting harassed by these people, receiving 20+ calls a day. It is annoying at best and at worst full on harassment. And the person they are trying to reach isn't even me! Not only am I receiving the phone calls but I am constantly getting texts…"[56]

- "Texting "STOP" to some text only stop that agent but not others who haven't contacted you, yet. With text and calls kept coming in, I went on USHEALTH site and found their office number (3 listed and all with the same information). Main HQ is in Texas. Texted each of them to be removed from their Sales/Lead list. Didn't stop them with the bombardment of calls and texts…"[57]

- "Absolute nightmare! I have received 79 calls in less than 3 days. The calls have started at 6:14 am, 6:28 am, and 7:32 am. They do not abide by the FCC regulations. I have filed complaints on every call before 8 am. they set up dummy sites that are not

---

[51] https://ushealth-advisors.pissedconsumer.com/harassing-phone-calls-201803081205851.html (last visited Aug. 30, 2019).
[52] *id* (last visited Aug. 30, 2019).
[53] *id* (last visited Aug. 30, 2019).
[54] https://ushealth-advisors.pissedconsumer.com/harassment-daily-harassment-and-inappropriate-201803011200463.html (last visited Aug. 30, 2019).
[55] https://www.bbb.org/us/tx/hurst/profile/insurance-services-office/us-health-advisors-james-schmitt-0825-235981131 (last visited Aug. 30, 2019).
[56] *id* (last visited Aug. 30, 2019).
[57] https://www.reddit.com/r/Scams/comments/bbv5h6/ushealths_unhealthy_spam_calls/ (last visited Aug. 30, 2019).

real insurance quotes and attempt to scam you with a discount program that is expensive and useless…”[58]

- “Probably the most annoying company i have EVER come across. They literally still blow up my WORK phone, even though i have told them probably 10 times to quit calling. That is no exaggeration either. They either are very unorganized, or just that annoying and disrespectful…”[59]

- “Someone keeps entering my phone number in their database. I keep getting phone calls and texts from agents all over the country asking for someone who isn’t me. It needs to stop. This has gone on for months. I am not interested in this company’s services at all but their agents keep spamming my phone, which is on the do not call list, and I have asked the company to remove me several times.”[60]

**F. Defendants Provide the Same Leads to Multiple Agents Resulting in Consumers Receiving Multiple Solicitation Calls from Defendants, Even After Telling Agents to Stop Calling**

85. UHA provides its leads through its autodialer system to multiple agents simultaneously. Because multiple UHA agents receive the same particular lead, in the event that the call recipient tells the first agent not to call again, there is no way for the other agents who received that same lead to know that the call recipient requested not to be called. This results in consumers receiving a slew of unwanted calls from UHA agents on the same day, even when they expressly instruct the agents not the call.

86. Designing their system in this way systematically harasses consumers like Ford and Pershwitz, in violation of TCPA.

87. UHA employees have admitted as much in their complaints to UHA:

- “Stop having leads allowed to be called multiple times per day by multiple agents as its hard to enough to build rapport with prospects when reaching out to help them with health insurance. Review the leads and make sure new agents are getting their fair share of the leads.”[61]

[58] https://www.trustpilot.com/review/ushealthgroup.com?languages=en&stars=1 (last visited Aug. 30, 2019).
[59] *id* (last visited Aug. 30, 2019).
[60] https://goo.gl/maps/owwrD2vDpXShrFXJ9 (last visited Aug. 30, 2019).
[61] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066_P3.htm (last

- "The leads are horrible and have been passed around so many times that the customer changed their # avoiding calls. Generate your own leads and stop buying the crappy recycled internet leads."[62]

- "Leads are overworked and harassed with new system. You have to work all the time."[63]

- "The leads are so diluted and so many times come from surveys that are misleading you waste hours and hours for 1 sale."[64]

- "Give us back the time to work a lead properly. This new way of working a lead by calling up to 7 times, and emailing and texting the SAME lead in one day so ridiculous and out right harassment. You are sabotaging us. You will be losing many good agents if you continue this way. NO ONE wants to be a telemarketer. I have never been yelled at so much. I use to love what I do and now I dread it. Discipline agents when they undercut other USHealth Agents and those who slander agents from another office in order to steal the sale!"[65]

88. Upon information and belief, Defendants require their agents to use the VanillaSoft system to call and text clients.

89. As depicted in the image below, within the VanillaSoft system provided to every UHA agent there are designations to be made after each call such as "Schedule a Call Back, Schedule an Appointment," but there are also negative designations such as "Bad Lead, Wrong Number, Do Not Call List."

---

visited Aug. 30, 2019).
[62] https://www.glassdoor.com/Reviews/USHEALTH-Advisors-Reviews-E594268_P5.htm (last visited Aug. 30, 2019).
[63] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066_P3.htm (last visited Aug. 30, 2019).
[64] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066_P3.htm (last visited Aug. 30, 2019).
[65] https://www.glassdoor.com/Reviews/USHEALTH-Group-Reviews-E1066_P3.htm (last visited Aug. 30, 2019).




90. Despite these features, consumers complain of receiving multiple calls and text messages, even after specifically requesting from one agent to stop calling.

91. As one former UHA agent stated:

> I was trained to break the law, specifically the law that says when a person says Do Not Call, you have to put them on the Do Not Call list. Nope, according to a USHA trainer, you only put them on the DNC list if and only if they ask to be put on the DNC list. Saying 'Don't call again,' as per my trainer, just bounces the customer back into the call queue. I put those people in DNC anyway as I wasn't about to commit illegal acts just because the trainer and everyone else wants you to pester people until they buy.[66]

92. Both Plaintiffs in this case were contacted by many of Defendants' agents despite telling the agents to stop calling or texting them.

---

[66] https://www.glassdoor.com/Reviews/USHEALTH-Advisors-Reviews-E594268_P7.htm (last visited Aug. 30, 2019).

93. In addition, many consumers like Plaintiffs in this case (such as the examples provided below), complain that they informed one agent to stop calling, but continued to receive calls and/or text messages from UHA agents:

- "They have called my number 39 times in 24 hrs. I'm still imaging repeat calls to file a formal complaint. I have already spoken to one man, David Z**** multiple times to advise him not to call."[67]
- I have received over 231 calls. I have continually asked that they not call me I am insured through my employer…They absolutely refused to stop calling me. They call on my home phone and my work phone.[68]
- "This company has contacted me non stop for over 48 hours, offering health insurance. I informed them I have health insurance and am not interested but they kept contacting me. During 3 occasions I asked to be removed off of their contact list. They informed they did and I still received calls. Several of them hung up on me. Horrible customer service. Don't ever request services from this harassing company."[69]
- "I am forced to file a formal complaint against this company. I have been getting harrassed with close to 100 calls a day! Not to mention emails and text messages. I've asked multiple agents to remove me from the list and stop calling and they have not. Do not support this type of business."[70]
- "I receive multiple calls a day from this company. I have called the corporate office multiple times asking for my name to be removed from their list and they still keep calling. The last guy that called me I asked for the corporate office phone number and he hung up on me. He wouldn't take my calls when I called him back. I called him from another phone number and he said he had no idea what I was talking about."[71]

[67] https://www.bbb.org/us/tx/grapevine/profile/insurance-companies/ushealth-advisors-llc-0825-235975292/customer-reviews (last visited Aug. 30, 2019).
[68] https://www.bbb.org/us/tx/grapevine/profile/insurance-companies/ushealth-advisors-llc-0825-235975292/customer-reviews (last visited Aug. 30, 2019).
[69] https://www.bbb.org/us/tx/grapevine/profile/insurance-companies/ushealth-advisors-llc-0825-235975292/customer-reviews (last visited Aug. 30, 2019).
[70] https://www.bbb.org/us/tx/grapevine/profile/insurance-companies/ushealth-advisors-llc-0825-235975292/customer-reviews (last visited Aug. 30, 2019).

[71] https://www.bbb.org/us/tx/grapevine/profile/insurance-companies/ushealth-advisors-llc-0825-235975292/customer-reviews (last visited Aug. 30, 2019).

## V. PLAINTIFF FORD'S ALLEGATIONS

94. Defendants and/or their agents made telephone calls, and sent text messages to, Ford's cell phone without his consent, using an autodialer.

95. On July 27, 2006, Ford registered his cell phone number with the DNC Registry to avoid receiving unsolicited telemarketing calls and text messages on his cellular phone.

96. Ford uses his cell phone for personal use and it is not associated with a business.

97. Beginning in October 2017, Ford received a barrage of unsolicited autodialed calls on his cell phone, apparently regarding an "insurance inquiry" that he never made.

98. Among the many calls Ford received were autodialed calls from Defendants' agents, including but not limited to UHA's agents, all seeking to offer him health insurance quotes.

99. When Ford answered the calls from Defendants' agents, he noticed that there was a definite pause, commonly referred to as "dead air," before the agent would come on the line. This pause (or "dead air") is indicative that the call was placed using an autodialer.

100. Ford made it clear to Defendants' agents that he was not looking for insurance and asked for the calls to stop. However, the calls did not stop.

101. When it became clear that he would not be taken off Defendants' call list, Ford began to block the phone numbers he received calls from. But this did not stop Defendants' agents from contacting him.

102. Specifically, on October 20, 2017, a UHA agent contacted Ford through a text message, acknowledging the numerous calls Ford had previously received. The text was sent at 8:05 PM from phone number 813-515-3873, and stated as follows:

> Hi, this is Sam, I'm a licensed health insurance agent in your state. I have been assigned to help you select your health coverage. I don't want to bombard you with annoying calls like everyone else. My job is to simply make sure you feel

comfortable with your health Insurance. I have access to every policy in your state and I'd be happy to show you your range of options even if you are just looking for quotes. Are you looking for a individual or family plan. Thank you, Sam[.] Call my Direct line 201-245-8811.




103. On October 27, 2017, at 4:36 PM, Ford sent a reply to 813-515-3873 saying "Stop". He then received an immediate response from 813-515-3873 stating, "To stop Pinger texts from 18135153873 reply STOP to confirm[.]" Ford replied immediately, "Stop[.]"

104. On October 25, 2017, at 10:16 AM, Ford received yet another call from Defendants and/or their agents, using phone number 570-471-5522. Ford did not answer the call, but the agent left a voicemail and identified himself as "Angel Williams."

105. On October 25, 2017 at 10:16 AM, at the exact same time Ford missed a call from Defendants' agent, Angel Williams, Ford also received yet another text message from Defendants, this time from a different phone number: 907-306-6455. This text message also referenced the calls Ford received, stating:

> Angel Williams UHG 9073066455 www.ushagent.com/angelwilliams" then "Good morning Sari, It's Angel your licensed US Health Advisor, I know you've been getting a lot of calls from thirsty pushy agents! I'm an advisor which is much different. My job is to educate my clients about the options they qualify for, evaluate their current coverage if covered and explain what plans cover and what they don't. I'm licensed with the state and can shop all the plans in the area. My national producer number is 18331651. When your ready to speak with a professional give me a ring! Blessings, Angel Williams 907-306-6455 UHA[.]

106. As of May 6, 2018, Angel Williams identified himself publicly on his LinkedIn profile as an employee and/or agent of UHG with a job title: "USHealth Licensed Health Advisor at US Health Group":




107. Below are screenshots of the text messages Ford received from Defendants and their agents, which clearly show that the messages were sent on behalf of UHG and UHA:



108. Ford sent an immediate reply to the foregoing text messages he received from phone number 907-306-6455 stating, "Please stop contacting me take my number of your list thank you."

109. Despite the two stop requests he sent, Ford received yet another text from 907-306-6455 on October 28, 2017 at 2:30 PM stating, "Angel Williams UHG 9073066455 www.ushagent.com/angelwilliams." After receiving that text message, Ford received yet another text message from Defendants and/or their agents stating:

> Good afternoon Sari, It's Angel your licensed Advisor with USHealth, Unfortunately you've been getting a lot of calls from thirsty pushy agents [unhappy face emoticon] I can help! My job is to find you the best coverage for the best rate while explaining how the plans work! New marketplace Premiums just posted today increases from 40% - 60%. If you qualify with good health I have access to New plans with preferred rates that can save you money and get you better coverage! Are you interested in a quote and reviewing your options?

Screenshots of these text messages are provided below:



110. Ford sent an immediate reply to 907-306-6455 stating, "Not interested ….stop."

111. He then sent another text, "Stop[.]"

112. This time, Ford did not receive any confirmation that the text messages would stop.

113. Soon after, on October 28, 2017, Ford received another set of unsolicited text messages on behalf of Defendants, this time from phone number 813-860-1993 stating, "Hey Sari, this is Rachel with USHEALTH. I'm sure you are getting a lot of calls so I was texting you in regards to the health insurance quote request you[.]"

114. Because the text was so long, it arrived in two parts. The second part states, "put out. Was this for you or your family also?"

115. Because this text message came in as two text messages, it is clear this is a standard SMS text message, not a MMS like the aforementioned text messages Ford received.

116. Frustrated with all of the constant and repeated calls and text messages discussed above ,Ford sent an immediate response to 813-860-1993 stating: "We have insurance now.Thank You very much would you kindly put our name on your do not call list Thank You Rachel have a good evening."

117. Ford does not have a relationship with Defendants, has never provided his telephone number directly to Defendants, or requested that Defendants and/or their agents send text messages to him or offer him their services.

118. Ford is not familiar with anyone named Sari, the name referenced in some of the text messages he received. Ford has also never used and does not know anyone that uses the email address referenced in the text messages above: mommar69@hotmail.com.

119. Simply put, Ford has never provided his prior express written consent to Defendants to place calls and/or send text messages to him, and he has no business relationship with either Defendant.

120. The unauthorized telephone calls made by Defendants and/or their agents, as alleged herein, have harmed Ford in the form of annoyance, nuisance, and invasion of privacy, and disturbed Ford's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phones' batteries) and the consumption of memory on his phone.

121. In addition, Ford suffered great frustration over the fact that he made attempts to stop the calls and text messages, but was unsuccessful in stopping Defendants' calls and text messages.

122. Seeking redress for these injuries, Ford, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA, which prohibits unsolicited autodialed and/or pre-recorded telephone calls to cellular telephones, unsolicited text messages to cellular telephones, and unsolicited calls to phone numbers registered with the DNC Registry.

## VI. PLAINTIFF PERSHWITZ'S ALLEGATIONS

123. Defendants and/or their agents called Pershwitz's cell phone, and sent text messages to his cell phone, without his consent, using an autodialer and prerecorded voice.

124. On October 6, 2006, Pershwitz registered his cellular phone number with the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls and text messages on his cellular phone.

125. Pershwitz uses his phone for personal use, and it is not associated with a business.

126. In the middle of November 2018, Pershwitz started receiving calls and text messages from Defendants' agents to his cellular phone, trying to solicit him to buy health insurance.

127. When the text messages first began, Pershwitz received a text message from one of Defendants' agents, and he replied by telling the agent that he/she had the wrong number. Nonetheless, other individuals who identified themselves as Defendants' agents continued to contact him to try and solicit business from him.

128. All of the text messages and calls that Pershwitz received were to his cellular phone.

129. Soon after informing the agent that he/she had the wrong phone number, Pershwitz received two identical prerecorded voicemail messages (also referred to as "voicemail drops") on his cellular phone from another one of Defendants' agents named Mike Bixler[72], both of which Pershwitz received on the same day, and both from telephone number: 734-479-9939. These messages stated as follows:

> Have you experienced the costs of the State exchange and do you find them to be too much? Is the deductible that needs to be met out of pocket first too much? Call me or text me Mike Bixler at 734-634-1308 and I'll give you a quote right over the phone. We have a national BPO in-program. We're a great [unknown]. We're an award winning program. Just give me a call 734-634-1308 and I'll give you a quote right over the phone. Let's compare. I look forward to it. Thanks.

(Recording available here: http://alturl.com/c2cm3).

130. On November 19, 2018 at 11:28 AM, Pershwitz received a text message from yet another one of Defendants' agents using phone number 248-289-9806. The text message stated as follows:

[72] https://www.linkedin.com/in/mike-bixler-a7546539/ (last visited Aug. 30, 2019).

> Jean, good morning! It's Terri Herrera licensed health insurance advisor with the state of TX. Instead of bombarding you with phone calls, I figured a text would work better. Just to verify I have you in Rockwall Zip- 75032 and your DOB of 09/21/1976. Were you looking for just yourself or you and your family?




131. None of the details stated in the above text match Pershwitz's information. The name, city, zip code and date of birth are all incorrect as they pertain to Pershwitz, clearly indicating the fact that Defendants had the wrong data in their system(s).

132. Pershwitz received another text message on November 19, 2018, from an agent of Defendants named Guillermo 'William' Salazar, from Tampa, Florida,[73, 74] this time at 4:45 PM from phone number 407-924-3334. The text message stated:

> Jean, this is William Salazar, licensed health advisor with the state. Let me search all plans for you. I do have you in 75032. Is the coverage just for yourself, or family as well? I'm only going to text you a quote, no phone calls/harassment.

---

[73] https://www.linkedin.com/in/guillermosf/ (last visited Aug. 30, 2019).
[74] https://secure.utah.gov/agent-search/agentDetails.html?agent=mNpEejZEp5 (last visited Aug. 30, 2019).




133. The zip code stated in the above text message does not match the zip code where Pershwitz lives.

134. Pershwitz received two more text messages on November 19, 2018, one at 8:02 PM and the next at 8:03 PM, both from phone number 813-360-7768. The text messages state:

> Hey Jean, Zac here just following up on a recent request I received for some health coverage information. I can provide you with options. Was it just for[.]" The second text message continues from the first stating, "yourself or your family as well?



135. On November 20, 2018 at 9:19 AM, Pershwitz received another text message from one of Defendants' agents, this time using phone number 813-403-3600, which stated as follows:

> Jean, I find it more respectful to text since you may be busy. Its Randy, licensed health advisor with the state of TX assigned to your request. I can simply text you accurate health insurance quotes so you can void the annoyance of phone calls. Were you looking for just yourself, or for you and your family?




136. The same agent texted Pershwitz again on November 21, 2018 at 10:25 AM, again using phone number 813-403-3600, and stating:

> Hi Jean, this is Randy following up again. My goal here is I want to find a nice balance between the premiums you pay and benefits you receive. If you've been bombarded I do have a website you can go to, to stop the calls. What has you looking for better health coverage options?



137. Mike Bixler, the same agent of Defendants that left two identical prerecorded messages for Pershwitz, also sent a text message on November 20, 2018 at 2:11 PM using phone number 331-209-5758. The text message states:

> Jean, This is the busy time, Open Enrollment. I can tell you there is not a plan out there that can cover you better with more tools like No Annual Deductible or Copay and with a PPO than the plan I have available. This is a national plan that will cover you from everyday Wellness to the finest coverage for Catastrophic. Call or text me at 734-634-1308 and I'll give you a quick quote over the phone. If you're interested we can move on, if this doesn't interest you've lost nothing. Mike Bixler, Licensed Agent,, Tuesday, November 20 2018, 9:45 AM. Call or text me at 734-634-1308 and I'll give you a quick quote over the phone. If you're interested we can move on, if this doesn't interest you've lost nothing. Mike Bixler, Licensed Agent,




138. Pershwitz received five text messages, all of which are part of the same message on November 20, 2018, all at 3:23 PM from another one of Defendants' agents, this time using phone number 203-559-0189, and stating as follows:

> Hello, this is Anthony licensed agent with the state. Just reaching", then in another text message, "out for our recent request for health coverage i can simplify that", then in another text message, "process for you. I'm sure you're at work or having family time, and", then in another text message, "out of respect I

figured I'd text you instead. You you like me to", then in another text message, "send you a quote? If not, I will not call or bombard your phone.




139. Pershwitz received yet another text message from another Defendants' agent, Brian Colon Rosado[75], on November 20, 2018, this time at 7:23 PM using phone number 813-449-2397. The text message states:

> Jean, I know the last thing you probably want are a million calls from crazy insurance people, so I am going to make this as convenient as possible for you by simply sending you a range of options by text. We can then discuss if interested. My name is Brian Colon, and I do have you in Rockwall (zip 75032) Is the coverage just for yourself, or your family?

---

[75] https://ushagent.com/BRIANCOLONUSHA (last visited Aug. 30, 2019).




140. As with previous text messages, the contact information attributed to "Jean" does not match Pershwitz's contact information. For instance, the city name (Rockwall) and zip code do not match Pershwitz's contact information.

141. Pershwitz received another unsolicited text message to his cellular phone from yet another agent of Defendants, Javier Cruz[76], on November 21, 2018 at 11:11 AM, this time from phone number 813-464-9591. The text message states:

> Hey Jean, I find it more respectful to text since you may be busy at work. It's Javier, licensed health advisor assigned to your request. It's open enrollment and things are busy, now is the time to enroll in a plan. I can get you a free quote and put you in a better position. Were you looking for just yourself, or for you and your family? License# W404566 NPN# 18439800

[76] https://ushagent.com/javiercruz (last visited Aug. 30, 2019).




142. On November 26, 2018 at 10:00 AM, Pershwitz received yet another unsolicited text message to his cellular phone from an agent acting on Defendants' behalf, this time from phone number 813-344-5511. The text message states:

> Hi Jean! This is Giovanni, licensed insurance professional in TX. Your file is going to be closed out, did you get your health insurance resolved? If I close it you'll lose access to a lot of plans, including PPO's plans with $0 deductibles.




143. Again on November 26, 2018, this time at 4:02 PM, Pershwitz received an unsolicited text message from yet another agent acting on Defendants' behalf. The text message was sent from 813-474-8061 and it states:

> Hey ! This is Korelle! I'm trying to disposition your file for your health coverage request. Since I have not heard anything due to you getting bombarded or being

busy I haven't closed it yet. I'd like to make this process as easy as possible for you. Should I close your file out or run a quote for you?




144. The last text message that Pershwitz received from, or on behalf of USHealth came on November 27, 2018 at 10:29 AM from yet another one of Defendants' agents, Destiny Granger.[77] The unsolicited text message was sent from 813-405-7561 and it states:

> Hey Jean, I didn't want to call again in case you were busy. My name is Destiny Granger, I'm a licensed health insurance advisor. I was assigned to you follow up and make sure you are presented with the best plan options available to you this. This is including Health based PPO plans that if you qualify for could save you a ton of money while providing better benefits with a $0 deductible.Should I send quotes for just you, or for you and your family?




[77] https://www.linkedin.com/in/destiny-granger-292016173/ (last visited Aug. 30, 2019).

145. Pershwitz does not have a relationship with Defendants, has never provided his telephone number directly to Defendants, or requested that Defendants send text messages to him or offer him their services.

146. Pershwitz is not familiar with anyone named Jean, the name referenced in the text messages he received. In addition, the contact information referenced by some of Defendants' agents in the text messages sent to Pershwitz does not match Pershwitz's contact information.

147. Simply put, Pershwitz has never provided his prior express written consent to Defendants to place calls and/or send text messages to him and he has no business relationship with Defendants.

148. The unauthorized telephone calls made by Defendants and/or their agents, as alleged herein, have harmed Pershwitz in the form of annoyance, nuisance, and invasion of privacy, and disturbed Pershwitz's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phones' batteries) and the consumption of memory on his phone.

149. In addition, Pershwitz suffered great frustration over the fact that he made attempts to stop the calls and text messages, but was unsuccessful in stopping Defendants' calls and text messages.

150. Seeking redress for these injuries, Pershwitz, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA, which prohibits unsolicited autodialed and/or pre-recorded telephone calls to cellular telephones, unsolicited text messages to cellular telephones, and unsolicited calls to phone numbers registered with the DNC Registry.

## VII. PLAINTIFFS' LEGAL BASIS FOR CLAIMS

151. All calls Defendants made to PlaintiffS invaded their privacy and violated 47 U.S.C. § 227(b)(1), 47 U.S.C. § 227(c) and/or regulations implementing the TCPA.

152. Upon information and belief, Defendants have called, and continue to call, thousands of wireless telephone customers to market their products and services in violation of the TCPA provisions relating to the DNC Registry and the IDNC List.

153. Defendants' repeated violations of the NDNC and INDNC regulations demonstrate that Defendants failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA and the rules and regulations promulgated thereunder.

154. Upon information and belief, Defendants have called, and continue to call, thousands of wireless telephone consumers to market their products and services using an autodialer and/or prerecorded voice messages in violation of the TCPA.

155. Upon information and belief, Defendants have called, and continue to call, thousands of wireless telephone consumers to market their products and services despite consumers' prior requests that the calls cease, in violation of the TCPA.

156. In order to redress injuries caused by Defendants' violations of the TCPA, Plaintiffs, on behalf of themselves and the Classes of similarly situated individuals defined herein, bring the claims alleged herein under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited calls to cellular phones and/or residential phones (1) using an autodialer; (2) using a prerecorded voice message; (3) to consumers that have been registered on the DNC Registry; (4) to consumers who have requested to be placed on Defendants' IDNC List; and/or (5) to consumers who requested that Defendants' calls and/or texts cease.

157. On behalf of Plaintiffs and the Classes, Plaintiffs seek an injunction requiring Defendants to cease all telemarketing to consumers on their cellular telephones and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees

## VIII. CLASS ALLEGATIONS

158. Ford and Pershwitz bring this action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and Rule 23(b)(3) on behalf of themselves and all others similarly situated (the "Class") and seek certification of the following Classes:

> **Prerecorded No Consent Class:** consisting of all persons in the United States who—within four years prior to the commencement of this litigation through the date that class notice is disseminated—received a call on their cellular telephone numbers using a prerecorded voice message, made by or on behalf of Defendants, and who did not grant Defendants prior express written consent to receive such calls.
>
> **Autodialed No Consent Class:** consisting of all persons in the United States who—within four years prior to the commencement of this litigation through the date that class notice is disseminated—received a call on their cellular telephone numbers, made by or on behalf of Defendants using an autodialer, and who did not grant Defendants prior express written consent to receive such calls.
>
> **Autodialed Stop Class**: consisting of all persons in the United States who—within four years prior to the commencement of this litigation through the date that class notice is disseminated—received a call on their cellular telephone numbers, made by or on behalf of Defendants using an autodialer, after they had requested that such calls cease.
>
> **DNC Registry Class**: consisting of all persons in the United States who—within four years prior to the commencement of this litigation through the date that class notice is disseminated—received two or more calls and/or texts during a twelve month period made by or on behalf of Defendants on their residential or cellular telephone numbers, that had been registered on the National Do Not Call Registry.
>
> **DNC Registry Stop Class**: consisting of all persons in the United States who—within four years prior to the commencement of this litigation through the date that class notice is disseminated—received two or more calls and/or texts during a twelve month period made by or on behalf of Defendants on their residential or cellular telephone numbers, that had been registered on the National Do Not Call Registry after they had requested that such calls cease.
>
> **IDNC List Class**: consisting of all persons in the United States who—within four years prior to the commencement of this litigation through the date that class notice is disseminated—received two or more calls and/or texts during a twelve month period made by or on behalf of Defendants on their residential or cellular telephone number after they had requested that such calls cease.

159. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their

subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class in accordance with FED. R. CIV. P. 23,; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiffs hereby reserve the right to amend the foregoing Class definitions following appropriate discovery.

160. **Numerosity**: Upon information and belief, Defendants have placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. Therefore, the members of the Class, are believed to be so numerous that joinder of all members is impracticable. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. The Class is also objectively defined and presently ascertainable by reference to records in the possession of Defendants or third parties, and their identification is a matter capable of ministerial determination from, *inter alia*, Defendants' call records.

161. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Classes, which predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not limited to the following:

(a) Whether Defendants placed calls to Pershwitz and members of the Class using a prerecorded voice message;

(b) whether Defendants utilized an automatic telephone dialing system to make their calls and send text messages to Plaintiffs and the members of the Class;

(c) whether Defendants made autodialed telephone calls and sent autodialed text messages to the Plaintiffs and members of the Class without first obtaining prior express written consent to make the calls/send the texts;

(d) whether Defendants placed solicitation calls to the Plaintiffs and members of the Class despite the fact that Defendants were placing calls to phone numbers protected by the DNC Registry;

(e) whether Defendants continued to place solicitation calls and/or send solicitation text messages to the Plaintiffs and members of the Class despite requests for the calls/texts to stop;

(f) whether Defendants' conduct constitutes a violation of the TCPA; and

(g) whether members of the Classes are entitled to treble damages based on the knowing/willfulness of Defendants conduct.

162. The common questions in this case are capable of having common answers. If Plaintiffs' claim that Defendants routinely violate the TCPA is correct, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

163. **Typicality**: Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

164. **Protecting the Interests of Class Members**: Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class and have retained competent counsel. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

165. **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are believed to be in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class Members prosecuting their own separate claims is remote, and, even if every member of

the Class could afford individual litigation, the court system would be unduly burdened by the individual litigation of such cases.

166. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

167. **Ascertainability**: The Class is defined in terms of objective characteristics and common transactional facts; namely, the exposure of sensitive Card Information to cyber criminals due to Defendant's failure to protect this information, adequately warn the Class that it lacked adequate data security measures, and failure to adequately warn that it was breached. Class membership will be readily ascertainable from Defendant's business records.

168. Plaintiffs reserve the right to revise the above Class definitions and any of the averments of fact herein based on facts adduced in discovery.

## IX. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Pershwitz and the Prerecorded No Consent Class)**

169. Plaintiffs repeat and reallege the superseding paragraphs of this Complaint and incorporate them by reference herein.

170. Defendants, their agents, or persons/entities acting on Defendants' behalf transmitted unwanted solicitation telephone calls to Pershwitz and the other members of the Prerecorded No Consent Class using a prerecorded voice message.

171. These prerecorded voice calls were made *en masse* without the prior express written consent of Pershwitz and the other members of the Prerecorded No Consent Class.

172. Defendants have, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B). As a result of Defendants' conduct, Pershwitz and the other members of the Prerecorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

173. In the event that the Court determines that Defendants' conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Ford, Pershwitz and the other members of the Autodialed No Consent Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the Autodialed No Consent Class)**

174. Plaintiffs repeat and reallege the superseding paragraphs of this Complaint and incorporate them by reference herein.

175. Defendants, their agents, or persons/entities acting on Defendants' behalf made unwanted solicitation telephone calls and sent unwanted solicitation text messages to cellular telephone numbers belonging to Ford and Pershwitz and the other members of the Autodialed No Consent Class using an autodialer.

176. These solicitation telephone calls and solicitation text messages were made *en masse* without the consent of Ford, Pershwitz and the other members of the Autodialed No Consent Class to receive such solicitation telephone calls and solicitation text messages.

177. Defendants did not have consent from Ford, Pershwitz, and the other members of the Autodialed No Consent Class orally or in writing to place such calls and/or send such texts.

178. Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Ford, Pershwitz and the other members of the Autodialed No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

179. In the event that the Court determines that Defendants' conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Ford, Pershwitz and the other members of the Autodialed No Consent Class.

**THIRD CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the Autodialed Stop Class)**

180. Plaintiffs repeat and reallege the superseding paragraphs of this Complaint and incorporate them by reference herein.

181. Defendants, their agents, or persons/entities acting on Defendants' behalf made unwanted solicitation telephone calls and sent unwanted solicitation text messages to cellular telephone numbers belonging to Ford, Pershwitz and the other members of the Autodialed Stop Class after being told to stop calling/texting.

182. These solicitation telephone calls and text messages were made *en masse* and/or sent without human intervention.

183. Defendants have, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (c)(5). As a result of Defendants' conduct, Ford, Pershwitz and the other members of the Autodialed Stop Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

184. In the event that the Court determines that Defendants' conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Ford, Pershwitz and the other members of the Autodialed No Consent Class.

**FOURTH CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the Do Not Call Registry Class)**

185. Plaintiffs repeat and reallege the superseding paragraphs of this Complaint and incorporate them by reference herein.

186. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

187. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[78]

188. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

189. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were

---

[78] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

190. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Ford, Pershwitz and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

191. Defendants violated 47 U.S.C. § 227(c)(5) because Ford, Pershwitz and the Do Not Call Registry Class received more than one call and/or text message in a 12-month period sent by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Ford, Pershwitz and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled to, *inter alia*, receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

192. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**<u>FIFTH CAUSE OF ACTION</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the Do Not Call Registry Stop Class)**

193. Plaintiffs repeat and reallege the superseding paragraphs of this Complaint and incorporate them by reference herein.

194. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber

who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

195. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[79]

196. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

197. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

198. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Ford, Pershwitz and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

199. Defendants violated 47 U.S.C. § 227(c)(5) because Ford, Pershwitz and the Do Not Call Registry Class received more than one call and/or text message in a 12-month period sent by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above *after*

[79] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

*already informing Defendants to stop the calls*. As a result of Defendants' conduct as alleged herein, Ford, Pershwitz and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

200. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SIXTH CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of the Plaintiffs and the IDNC List Class)**

201. Plaintiffs repeat and reallege the superseding paragraphs of this Complaint and incorporate them by reference herein.

202. Under 47 C.F.R. § 64.1200(d): No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. Furthermore, Defendants were required to train their personnel engaged in any aspect of telemarketing to use and maintain a do-not-call list.

203. 47 C.F.R. § 64.1200(d) further requires Defendants to record all call recipients' requests not to be called, as well as their name, if provided, and telephone number, on the do-not-call list at the time the request is made. Defendants are then required to honor—for a period of 5 years—all such requests not to be called within a reasonable period of time from the date of all such requests, not to exceed thirty days.

204. Pursuant to 47 C.F.R. § 64.1200(d), Defendants are also required to inform all call recipients with the name of the person making the call, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

205. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

206. Defendants, their agents, or persons/entities acting on Defendants' behalf initiated telephone solicitations to Plaintiffs and members of the IDNC List Class notwithstanding Defendants and their agents' failure to implement internal procedures for maintaining a list of persons who request not to be called and/or by implementing procedures that do not meet the minimum standards for initiating telemarketing calls.

207. Defendants are directly liable for their agents' calls and/or calls made on their behalf. Furthermore, Defendants are vicariously liable for their agents' calls because their agents had actual and/or apparent authority to make the calls on Defendants' behalf and/or Defendants directed and/or ratified their agents' actions.

208. Thus, Defendants have violated 47 U.S.C. § 227(c)(5). As a result of Defendants' conduct, Plaintiffs and the other members of the IDNC List Class are each entitled to up to $1,500 for each violation.

**SEVENTH CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227(b)(3)(c))**
**(On behalf of Plaintiffs and the All Classes)**

209. Plaintiffs repeat and reallege the superseding paragraphs of this Complaint and incorporate them by reference herein.

210. At all times relevant to this action, Defendants knew or should have known that their conduct as alleged herein violated the TCPA.

211. Defendants knew that they did not have prior express written consent or prior express consent to make these calls to Plaintiffs and Class Members.

212. Defendants knew or should have known that they were using equipment which constitutes automatic telephone dialing systems under the TCPA to place these calls and/or that they were using artificial or prerecorded calls that violated the TCPA.

213. Based on Defendants' knowledge of the foregoing, Plaintiffs and Class Members are entitled to an award of $1,500 in statutory damages for each and every violation, pursuant to 47 U.S.C. §§ 227(b)(3)(B) and (C).

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

a) An order determining that this action is a proper class action under Federal Rule of Civil Procedure 23, certifying Plaintiffs as a Class representatives under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs' counsel as Class Counsel for the Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure;

b) A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*.;

c) A declaratory judgment that Defendants' telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

d) An injunction enjoining Defendants from placing telephone calls in violation of the TCPA without the prior express permission of the called party;

e) An award of actual and/or statutory damages, including but not limited to, $500.00 for each violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

f) A declaration that Defendants willfully and/or knowingly engaged in the conduct described herein in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3)(C);

g) An award of three times the amount of actual and/or statutory damages, pursuant to 47 U.S.C. § 227(b)(3)(C);

h) An award of any and all costs and expenses incurred by Plaintiffs and the other members of the Class by bringing this action, including reasonable counsel fees and expert fees; and

i) An order requiring Defendants to disgorge any ill-gotten funds acquired as a result of their unlawful telephone calling practices;

j) An injunction requiring Defendants to cease all unsolicited calling/texting activity, to implement sufficient TCPA related policies and procedures, and to otherwise protect the interests of the Class; and

k) Such further and other relief the Court deems reasonable and just.

## XI. JURY DEMAND

Plaintiffs request a jury trial.

Respectfully Submitted,

**PLAINTIFFS JOSEPH FORD JR.** and **EDWARD PERSHWITZ**, individually and on behalf of those similarly situated individuals

Dated: August 30, 2019

By: [signature]

Benjamin F. Johns (PA ID No. 201373)
Mark B. DeSanto (admitted *pro hac vice*)
Email: bfj@chimicles.com
mbd@chimicles.com
Chimicles Schwartz Kriner & Donaldson-Smith LLP
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: 610-642-8500
Facsimile: 610-649-3633

Stefan Coleman (admitted *pro hac vice*)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Attorneys for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

I, Benjamin F. Johns, certify that on August 30, 2019, I caused the foregoing to be filed using the Court's CM/ECF system, thereby causing it to be served upon all registered ECF users in this case.

Benjamin F. Johns