**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOSEPH FORD JR.** and **EDWARD PERSHWITZ**, individually, and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>**USHEALTH ADVISORS, LLC, AND USHEALTH GROUP, INC.,**<br><br>*Defendants.* | Case No. 3:19-CV-01091-ARC<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

# PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT USHEALTH GROUP, INC.'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........ 1

II. STATEMENT OF FACTS ........ 3

A. Defendants Harassed Plaintiff Ford with Unsolicited Calls, Texts and Voicemails Despite His Repeated Requests that they Stop and Registration on the DNC Registry ........ 3

B. Defendants Harassed Plaintiff Pershwitz with Unsolicited Calls, Texts, Voicemails and Prerecorded Messages Despite His Repeated Requests that they Stop and Registration on the DNC Registry ........ 4

C. Defendants' Own Employees and Consumers Uniformly Confirm that Defendants Violate the TCPA by Harassing Consumers with Unsolicited Communications ........ 8

D. UHA's Transmits Unsolicited Communications on UHG's Behalf to Market UHG's Business, Including Continuous Contacts with Pennsylvania Residents ........ 9

III. STANDARDS OF REVIEW ........ 12

A. FED. R. CIV. P. 12(b)(2) Standard ........ 12

B. FED. R. CIV. P. 12(b)(6) Standard ........ 12

IV. ARGUMENT ........ 13

A. Plaintiffs' Allegations that "Defendants Made" Calls/Texts are Sufficient to Establish Direct Liability Under the TCPA ........ 14

B. Even if UHG and/or UHA Did Not Make the Communications at Issue, They Are Nonetheless Directly Liable Under the TCPA ........ 15

C. Defendants are also Vicariously Liable for the TCPA Violations ........ 17

D. This Court has Specific Personal Jurisdiction over UHG....................20

E. UHG Concedes that this Court Recently Held that *Bristol-Myers Squibb* Does Not Apply to Class Actions....................26

V. CONCLUSION..........................................................................................28

**TABLE OF AUTHORITIES**

**CASES**

*Abramson v. Agentra, LLC*,
Civil Action No. 18-615, 2018 U.S. Dist. LEXIS 212285 (W.D. Pa. Dec. 18, 2018) ........ *passim*

*Abramson v. Caribbean Cruise Line, Inc.*,
No. 2:14-cv-00435, 2014 U.S. Dist. LEXIS 88336 (W.D. Pa. June 23, 2014) ........ 22

*Abramson v. CWS Apartment Homes, LLC*,
No. 16-426, 2016 U.S. Dist. LEXIS 146627 (W.D. Pa. Oct. 24, 2016) ........ 22

*Baker v. Caribbean Cruise Line*,
No. CV 13-8246-PCT-PGR, 2014 WL 880634 (D. Ariz. Mar. 6, 2014) ........ 23

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2015) ........ 26, 27

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........ 23

*Cardenas v. Spinnaker Resorts, Inc.*,
No. CV 16- 2466 (JLL), 2017 WL 3315285 (D.N.J. Aug. 3, 2017) ........ 23

*DiMare v. Metlife Ins. Co.*,
369 F. App'x 324 (3d Cir. 2010) ........ 13

*Gen. Elec. Co. v. Deutz AG*,
270 F.3d 144 (3d Cir. 2001) ........ 12

*Gress v. Freedom Mortg. Corp.*,
386 F. Supp. 3d 455 (M.D. Pa. 2019) ........ 12, 26, 27

*Hartley-Culp v. Green Tree Serv., LLC*,
52 F. Supp. 3d 700 (M.D. Pa. 2014) ........ *passim*

*Heidorn v. BDD Marketing & Mgt. Co., LLC*,
Case No. C-13-00229 JCS, 2013 WL 6571629 (N.D. Cal. Aug. 19, 2013) .....22

*Hicks v. Health Ins. Innovations, Inc.*,
No. CV173344SDWLDW, 2017 WL 6764054 (D.N.J. Dec. 20, 2017) .....24

*Kline v. United N. Mortg. Bankers Ltd.*,
No. 4:18-CV-00489, 2018 U.S. Dist. LEXIS 157816 (M.D. Pa. Sep. 17, 2018) .....15, 25, 26

*Leon v. Target Corp.*,
No. 15-01, 2015 U.S. Dist. LEXIS 34490 (M.D. Pa. Mar. 19, 2015) .....12

*Luna v. Shac, LLC*,
No. C14-00607 HRL, 2014 WL 3421514 (N.D. Cal. July 14, 2014) .....22

*Metcalfe v. Renaissance Marine, Inc.*,
566 F.3d 324 (3d Cir. 2009) .....12

*O'Connor v. Sandy Lane Hotel Co.*,
496 F.3d 312 (3d Cir. 2007) .....12

*Richardson v. Verde Energy USA, Inc.*,
No. 15-6325, 2016 U.S. Dist. LEXIS 175642 (E.D. Pa. Dec. 19, 2016) .....14, 16

*Rinky Dink Inc. v. Electronic Merchant Systems Inc.*,
No. C13-1347-JCC, 2014 WL 5880170 (W.D. Wash. Sept. 30, 2014) .....22

**STATUTES**

47 U.S.C. §§ 227 *et seq.* .....1

**OTHER AUTHORITIES**

FED. R. CIV. P. 9(b) ........................................................................................13

FED. R. CIV. P. 12(b)(2) ....................................................................................12

FED. R. CIV. P. 12(b)(6) ....................................................................12, 13, 14

Plaintiffs Joseph Ford Jr. ("Ford") and Edward Pershwitz ("Pershwitz") (collectively, "Plaintiffs") hereby submit this opposition to Defendant USHealth Group, Inc.'s ("UHG") Motion to Dismiss the First Amended Class Action Complaint[1] (ECF No. 32) ("Def. Br."), and in support thereof state as follows.

## I. PRELIMINARY STATEMENT

Plaintiffs allege that they collectively received no less than ***thirty*** unsolicited calls, text messages, voicemails, and/or prerecorded voice messages from Defendants, or third-parties acting at Defendants' direction or on their behalves, on Plaintiffs' cellular phones, despite the fact that both of their phone numbers were registered on the National "Do Not Call" Registry ("DNC Registry"), and that they made repeated requests to Defendants for the unsolicited communications to stop. These allegations, alone, are sufficient to plead a violations of multiple provisions of the Telephone Consumer Protection Act ("TCPA") (codified by 47 U.S.C. §§ 227 *et seq.*), because even if UHG did not make the unsolicited communications, multiple opinions from this Court as recently as September 2018 establish that UHG is nonetheless ***directly*** liable under the TCPA for calls made at its direction and/or on its behalf.

[1] Unless otherwise indicated, all references herein to "¶ __" refer to the enumerated paragraphs of Plaintiffs' First Amended Class Action Complaint (ECF No. 25), filed on August 30, 2019.

Moreover, this Court's prior opinions also make clear that because UHG is directly liable for calls it did not make so long as such calls were made on its behalf, Plaintiffs are not required to plead that it is vicariously liable for the calls. This defeats UHG's vicarious liability argument. Nonetheless, this Court has previously held that allegations identical to those made by Plaintiff here (i.e., that calls were "directed by," made "on behalf of" UHG, or by its "agents") are sufficient to plead that UHG is also vicariously liable for the calls at issue.

UHG goes on to argue that the Court lacks personal jurisdiction because third-parties directed the unsolicited communications at the forum state, not UHG. This argument is unavailing because Plaintiffs allege that UHG, through its marketing arm (UHA) and/or third-party telemarketers, contacts consumers in Pennsylvania using unsolicited calls, text messages, voicemails, and/or prerecorded voice messages. Plaintiffs allege that these unsolicited communications were made at UHG's direction, or on its behalf, and Plaintiffs' claims undeniably arise from these communications. These allegations are sufficient to establish specific personal jurisdiction over UHG. At a minimum, Plaintiffs should be afforded an opportunity to take jurisdictional discovery of UHG's connections to this forum.

## II. STATEMENT OF FACTS

### A. Defendants Harassed Plaintiff Ford with Unsolicited Calls, Texts and Voicemails Despite His Repeated Requests that they Stop and Registration on the DNC Registry

In July 2006, Mr. Ford registered his cell phone number with the National Do-Not-Call Registry ("DNC Registry") to avoid receiving annoying, unsolicited calls and text messages from telemarketers. ¶ 95. Notwithstanding, during a span of only eight days in October 2017, Plaintiff Ford received at least ***nine*** unsolicited text messages, voice mails, and phone calls from individuals claiming to be employees and/or agents of "USHEALTH Group" and "USHEALTH Advisors." *See* ¶¶ 94-122. At all times relevant hereto, Mr. Ford resided in and was a citizen of Pennsylvania, and his cell phone number starts with a Pennsylvania area code: "570". ¶ 10. Mr. Ford alleges that the individuals who transmitted these unsolicited communications were employees and/or agents of ***both*** Defendants, or otherwise transmitted the communications on behalf of ***both*** Defendants. *E.g.*, ¶ 107 ("the messages were sent on behalf of UHG and UHA."); ¶ 142 ("from an agent acting on Defendants' behalf.").

As support for the allegation that these unsolicited communications were made by Defendants' employees/agents and/or on Defendants' behalf, Mr. Ford inserted screenshots into the Complaint from: (1) his cell phone showing text messages sent by Defendants' agent, Angel Williams, identifying himself as

working for ***both Defendants*** "USHEALTH Group" and "USHEALTH Advisors" (¶¶ 107, 109), containing a web address: www.ushagent.com/angelwilliams, which is a link to UHG's website (*id.*); and (2) Angel Williams' LinkedIn profile, which lists "USHealth Group", which is UHG, as his current employer (¶ 106). Furthermore, Mr. Ford alleges that the sender of every single call, text message and voice mail identified themselves as an employee/agent of "USHealth" (¶¶ 105-13).

Mr. Ford made at least ***six*** requests that Defendants cease sending him text messages and voice mails, and calling his phone, but Defendants disregarded every such request and proceeded to contact him. ¶¶ 102-16. Mr. Ford has never had a relationship with Defendants, has never provided his telephone number directly to Defendants, or requested that Defendants and/or their agents send text messages, phone calls, or voicemails to him. ¶ 117.

### B. Defendants Harassed Plaintiff Pershwitz with Unsolicited Calls, Texts, Voicemails and Prerecorded Messages Despite His Repeated Requests that they Stop and Registration on the DNC Registry

Similarly, in October 2006, Mr. Pershwitz registered his cellular phone number with the DNC Registry to avoid the receipt of harassing telemarketing calls. ¶ 124. Notwithstanding, Defendants sent Mr. Pershwitz ***twenty-one*** text messages, phone calls, voicemails, and/or prerecorded messages to his cell phone

in a span of only eight days. ¶ 123-44. Of these twenty-one unsolicited communications, Mr. Pershwitz alleges that he received:

(1) four prerecorded messages and at least one text from Defendants' employee/agent Mike Bixler (¶¶ 129, 137), who holds himself out as an employee of USHealth Advisors[2]:




(2) at least one text message from Defendants' employee/agent Guillermo "William" Salazar (¶ 132) who holds himself out as an employee of USHealth Advisors[3]:




[2] ¶ 129 n. 72 (containing a link to Mike Bixler's LinkedIn Profile: https://www.linkedin.com/in/mike-bixler-a7546539/, which lists "USHealth Advisors" as his current employer).

[3] ¶ 132 (containing a link to Guillermo 'William' Salazar's LinkedIn Profile: https://www.linkedin.com/in/guillermosf/, which lists "USHealth Advisors" as his current employer) (containing a link to Utah State Insurance Department "Agent Search" page listing Mr. Guillermo as an employee of USHealth Advisors LLC).

(3) at least one text message from Defendants' employee/agent Brian Colon Rosado (¶ 139) who is listed as an employee on USHealth Advisors' website[4]:




(4) at least one text message from Defendants' employee/agent Javier Cruz (¶ 141) who is listed as an employee on USHealth Advisors' website[5]:




and (5) at least one text message from Defendants' employee/agent Destiny Granger (¶ 144) who holds herself out as a current employee of USHealth Advisors[6]:

---

[4] ¶ 139 (containing a link to Defendant USHealth Advisors, LLC's website listing Mr. Colon as one of its employees: https://ushagent.com/BRIANCOLONUSHA).

[5] ¶ 139 (containing a link to Defendant USHealth Advisors, LLC's website listing Mr. Colon as one of its employees: https://ushagent.com/BRIANCOLONUSHA).

[6] ¶ 144 (containing a link to Destiny Granger's LinkedIn Profile: https://www.linkedin.com/in/destiny-granger-292016173/, which lists "USHealth




Like Mr. Ford, Mr. Pershwitz has never had a relationship with Defendants, never provided Defendants with his telephone number, and never consented to receive calls, text messages, voicemails, or prerecorded voice messages from Defendants. ¶ 145.

### C. Defendants' Own Employees and Consumers Uniformly Confirm that Defendants Violate the TCPA by Harassing Consumers with Unsolicited Communications

The Complaint contains ten quotes from consumers complaining on various internet websites about receiving similar harassing, unsolicited communications from Defendants (¶ 84), and five quotes from consumers complaining that Defendants continued to contact them even though they made multiple requests for Defendants to stop (¶ 93). Internet posts from Defendants' former and current employees admit that Defendants' abrasive telemarketing practices result in harassing consumers with unsolicited communications:

---

Advisors" as her current employer).

> The leads are horrible and have been passed around so many times that the customer changed their # avoiding calls …. Leads are overworked and harassed with new system …. This new way of working a lead by calling up to 7 times, and emailing and texting the SAME lead in one day so ridiculous and out right harassment ….

¶ 87. Similarly, Defendants' agents admit on various public internet fora that Defendants' telemarketing practices disregard the DNC Registry and violate the TCPA:

> I was trained to break the law, specifically the law that says when a person says Do Not Call, you have to put them on the Do Not Call list. Nope, according to a USHA trainer, you only put them on the DNC list if and only if they ask to be put on the DNC list. Saying 'Don't call again,' as per my trainer, just bounces the customer back into the call queue ….

¶ 91.

### D. UHA's Transmits Unsolicited Communications on UHG's Behalf to Market UHG's Business, Including Continuous Contacts with Pennsylvania Residents

UHA is a wholly owned national sales and distribution subsidiary of UHG (¶ 2) whose sole objective is to use its 3,500 telemarketing agents nationwide to transmit unsolicited telephone calls, text messages, voicemails, and prerecorded messages to consumers marketing UHG's business on UHG's behalf. *See, e.g.*, ¶¶ 40, 50. The Complaint is replete with allegations that UHA is the "marketing arm of UHG" (¶ 2), and in this role its agents acted at all relevant times on UHG's behalf. *See* ¶¶ 39-55. Although UHG claims that the agents are

fully independent and not in any way affiliated with it, the truth is that the agents making the calls/texts are virtually employees of ***both*** Defendants because:

(1) UHG's business reports state that it employs "selling agents" and increased the number of them by 30% in 2016 (¶ 47);

(2) UHG's business reports state that UHA's sales success grew UHG's stock price exponentially between 2010 and 2017 (¶ 48); and/or

(3) UHG's website contains a tab for UHA's agents' access (¶ 45);

(4) UHA pays agents in cash or shares of UHG's stock for signing up new consumers for Defendants' health insurance products (¶ 41);

(5) Defendants give the agents permission to use UHG's and/or UHA's logos, trademarks, proprietary information, and other business markings (*id.*);

(6) UHA's agents commonly publicize that they work for UHG (¶ 46);

(7) Defendants contract with the agents for them to make telemarketing calls and text messages on Defendants' behalf (¶ 44);

(8) Defendants grant the agents access to their non-public business systems, pricing information, and other proprietary business information (*id.*);

(9) Defendants provide the agents with "leads" (i.e., telephone numbers) to call/text message on Defendants' behalf (*id.*);

(10) Defendants provide the agents with software (i.e., VanillaSoft)—that has autodialing and prerecorded message functionality—and directs the agents to call/text consumers on Defendants' behalf (*id.*);

(11) The agents are able to enter consumers' information gathered during the calls/text messages directly into Defendants' business systems (*id.*);

(12) UHA's website is copyrighted and otherwise controlled by UHG (¶ 49);

For these same reasons, Plaintiffs also allege that contrary to UHG's argument that "[UHG] … does not exert control over [UHA] or its independent contractors,"

UHG does control UHA and instructs it to market UHG's services through its telemarketing agents. *See* ¶¶ 39-55. In further support of these allegations, the Complaint includes a quote from—and link to—a post from a UHG Senior Vice President who admitted that UHA provides leads to "our agents," meaning UHG's agents. ¶ 59; *see also id.* n.24. Furthermore, both Defendants work out of, and share, the same physical address for their principal places of business. ¶ 13.

Furthermore, numerous internet posts from Defendants' current and former agents confirm that Defendants provide their agents with an autodialer system, VanillaSoft, and instruct their agents to use the autodialer to place hundreds of calls per day to consumers marketing UHG's business. ¶¶ 63-83; ¶ 72 ("Defendants' agents are instructed by Defendants to use the autodialer feature to place calls marketing UHG's business".). Defendants require their agents to use the autodialer to (1) "automatically generate phone numbers and dial them without any human intervention" (¶ 72); (2) manipulate the agent's phone number with the same area code as the consumer to disguise that it is an unsolicited sales call (¶ 73); and (3) send unsolicited autodialed text messages to consumers *en masse* (¶ 74).

Both Defendants have relevant connections to Pennsylvania including but not limited to: (1) UHG's website lists multiple employees who work in Pennsylvania (¶ 18); (2) UHA maintains and operates a sales team in

Pennsylvania (¶¶ 17-18); (3) UHA has multiple job postings seeking employees to fill positions in Pennsylvania (¶¶ 19-21); and (4) both Defendants regularly direct unsolicited telemarketing communications to consumers in Pennsylvania (*see, e.g.*, ¶¶ 22-24).

October 7, 2019, counsel for UHG agreed to accept service on behalf of UHA, of Plaintiffs' Complaint. As such, UHA's response to the Complaint is due on December 6, 2019.

## III. STANDARDS OF REVIEW

### A. FED. R. CIV. P. 12(b)(2) Standard

"[I]n deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). "[T]he plaintiffs need only establish a prima facie case of personal jurisdiction." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). "The Supreme Court has recognized two types of personal jurisdiction: general and specific." *Gress v. Freedom Mortg. Corp.*, 386 F. Supp. 3d 455, 463 (M.D. Pa. 2019). "Specific jurisdiction is established when a non-resident defendant has purposefully directed his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001).

### B. FED. R. CIV. P. 12(b)(6) Standard

Rule 8's liberal pleading standard applies to cases alleging violations of the TCPA. *See, e.g.*, *Leon v. Target Corp.*, No. 15-01, 2015 U.S. Dist. LEXIS 34490, at *3 (M.D. Pa. Mar. 19, 2015). This Court has consistently explained that "[t]he federal rules require only that plaintiff provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,' a standard which 'does not require detailed factual allegations.'"[7] *Hartley-Culp v. Green Tree Serv., LLC*, 52 F. Supp. 3d 700, 702 (M.D. Pa. 2014) (quoting *McTernan v. N.Y.C.*, 564 F.3d 636, 646 (3d Cir. 2009)). "All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, 'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" *Id.* at 701 (quoting *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 665-66 (3d Cir. 1988)). Furthermore, the Third Circuit has previously explained, "a plaintiff cannot be expected to have personal knowledge of the details of corporate internal affairs and, thus, the Third Circuit has relaxed FED. R. CIV. P. 9(b) when factual information is peculiarly within the defendant's knowledge or control." *DiMare v. Metlife Ins. Co.*, 369 F. App'x 324, 330 (3d Cir. 2010).

---

[7] Unless otherwise indicated, all emphasis and alterations are added and all internal citations are omitted.

## IV. ARGUMENT

Out of UHG's twenty-seven page motion to dismiss, only three pages pertain to UHG's request that the Court dismiss Plaintiffs' claims pursuant to Rule 12(b)(6). *See* Def. Br. at 24-27. UHG's Rule 12(b)(6) challenge is limited only to arguing that (1) it cannot be found directly liable under the TCPA because it did not place the calls/texts at issue (Def. Br. at 24-25); and (2) it cannot be found vicariously liable under the TCPA because Plaintiffs failed to allege each element of the agency theory supporting vicarious liability (*id.* at 25-27). UHG does not challenge any other aspect of Plaintiffs' claims under Rule 12(b)(6). As such, Plaintiffs respond by addressing the arguments raised by UHG.

### A. Plaintiffs' Allegations that "Defendants Made" Calls/Texts are Sufficient to Establish Direct Liability Under the TCPA

As an initial matter, it is well-settled in the Third Circuit that merely alleging that "Defendants made unsolicited" calls is sufficient to allege direct liability under the TCPA. *See, e.g.*, *Richardson v. Verde Energy USA, Inc.*, No. 15-6325, 2016 U.S. Dist. LEXIS 175642, at *9 (E.D. Pa. Dec. 19, 2016). For instance, in *Richardson*, the court held that the plaintiff's allegation that "Defendant made one or more authorized calls to Plaintiffs' cell phones using an [ATDS] and/or pre-recorded voice for the purpose of soliciting business" was sufficient." *Id.* at *9-10. Here, Plaintiffs make allegations almost identical to those in *Richardson*:

- "Defendants have called, and continue to call, thousands of wireless telephone customers to market their products and services in violation of the TCPA provisions relating to the DNC Registry and the IDNC List." ¶ 152;
- "Defendants have called, and continue to call, thousands of wireless telephone consumers to market their products and services using an autodialer and/or prerecorded voice messages …." ¶ 154;
- "Defendants have called, and continue to call, thousands of wireless telephone consumers to market their products and services despite consumers' prior requests that the calls cease …." ¶ 155; and
- "Defendants' repeated violations of the NDNC and INDNC regulations demonstrate that Defendants failed to establish and implement reasonable practices …." ¶ 153.

These allegations are sufficient to plead that both Defendants, not just UHG, are directly liable under the TCPA; nothing further is required. *See id*. Indeed, Judge Brann recently held that a plaintiff's allegation that the defendant "made prerecorded or artificial voice calls to Plaintiff's cellular telephone" was sufficient to plead direct liability under the TCPA. *Kline v. United N. Mortg. Bankers Ltd.*, No. 4:18-CV-00489, 2018 U.S. Dist. LEXIS 157816, at *3 (M.D. Pa. Sep. 17, 2018).

**B. Even if UHG and/or UHA Did Not Make the Communications at Issue, They Are Nonetheless Directly Liable Under the TCPA**

Moreover, Judge Munley recently held that even if third-parties made the calls rather than Defendants, Defendants are nonetheless directly liable for TCPA violations committed on their behalf. *See Hartley-Culp*, 52 F. Supp. 3d at 702. UHG ignores this opinion, cites two out-of-circuit cases instead, and erroneously

argues "direct liability under the TCPA can exist only against the actual ***'maker'*** of the call at issue, *i.e.*, the party that physically placed or initiated the call." Def. Br. at 24 (emphasis in original). UHG is incorrect.

In *Hartley-Culp*, the defendant made the same argument UHG asserts here, and moved to dismiss on the ground that it did not place the calls at issue and therefore could not be held liable because "the TCPA imposes liability **only upon those who actually place the calls**." 52 F. Supp. 3d at 702. Judge Munley disagreed and held "that the TCPA can impose liability directly … upon any person or entity on whose behalf a third party places a call in violation of [the TCPA]." *Id*. at 703. In so holding, Judge Munley explained that "the FCC has ruled that 'a [defendant] **on whose behalf** an autodialed … call is made to a wireless number **bears the responsibility** for any violation of the Commission's rules'" such that "**[c]alls placed by a third party** … **are treated as if the [defendant] itself placed the call**." *Id*. at 702-03; *see also id*. at 703 ("[t]he FCC clearly ruled that the [defendant] is placed 'in the shoes' of the caller for purposes of liability under the TCPA's autodialing provisions.").[8] Thus, based on this

[8] Courts throughout the Third Circuit are in accord. *See, e.g.*, *Richardson*, 2016 U.S. Dist. LEXIS 175642, at *10-11 (denying UHG's same argument, denying the motion to dismiss, and holding: "even if discovery shows that **a third party agent acting on the defendant's behalf *made* the calls in question** … the TCPA can impose liability directly … upon any person or entity on whose behalf a third party places a call in violation of [the TCPA]."); *Abramson v. Agentra, LLC*, Civil Action No. 18-615, 2018 U.S. Dist. LEXIS 212285, at *8 (W.D. Pa. Dec. 18,

Court's holding in, *inter alia*, *Hartley-Culp*, UHG is directly liable under the TCPA even if it did not make the calls at issue.[9] Thus, Plaintiffs' allegations that the unsolicited communications were made on both Defendants' behalves are sufficient to establish that both Defendants are directly liable under the TCPA.

**C. Defendants are also Vicariously Liable for the TCPA Violations**

Next, UHG argues that it is not vicariously liable because Plaintiffs failed to plead sufficient facts to establish an agency relationship between it and the purported third-party call-makers. Def. Br. at 25-27. However, as discussed above, UHG is directly liable even if a third-party transmitted the alleged communications and, as a result, its argument that Plaintiffs failed to plead vicarious liability is moot and need not be addressed. *Hartley-Culp*, 52 F. Supp. 3d at 703. Indeed, in *Hartley-Culp*, Judge Munley made clear that the Court need not address arguments identical to UHG's vicarious liability argument:

---

2018) (Denying the defendant's argument that it was not directly liable under the TCPA because it did not make any calls, and holding same).

[9] For these same reasons, this Court has rejected the holding in all of the out-of-district cases cited by UHG (*see* Def. Br. at 25-26 (collecting cases)) that require the plaintiff to plead an agency relationship between the caller and the entity on whose behalf the calls were made. *Compare Hartley-Culp*, 52 F. Supp. 3d at 704-05 ("plaintiff alleges that [Defendant]'s agent … placed the calls at the direction and under the control of [Defendant]. Therefore, plaintiff claims that the actions of the agent were authorized, circumstances under which … liability would attach. Finally, as we held above, the FCC's rule means that [Defendant] can be held directly liable for the violations of the TCPA alleged here ….").

> [Defendant] next argues that plaintiff has not sufficiently plead an allegation of vicarious liability. **Because we have held that [Defendant] could be held directly liable under the TCPA, a failure on plaintiff's part to plead vicarious liability would not carry the day** for [Defendant] ….

*Id*. Nonetheless, even if Plaintiffs were required to plead vicarious liability, this Court has previously held that allegations nearly identical to Plaintiffs' are sufficient to do so.

Specifically, in *Hartley-Culp* once again, Judge Munley was confronted with the same argument that UHG makes here that Plaintiffs made "only conclusory, boilerplate references to [the third-party] placing calls 'on behalf of' [defendant]" that were insufficient to plead vicarious liability. *Id*. at 703. Judge Munley disagreed and held that the plaintiff's allegations that the calls were made "**at [defendant]'s direction** … by itself, is enough to state a claim, plausible on its face, that [defendant] is vicariously liable for the phone calls made by [third-parties]." *Id*. at 704. Here, Plaintiffs made nearly identical allegations that "UHA acted **on UHG's behalf** and/or **at its direction**" (¶ 24), "UHA engages in its telephone and text message marketing efforts **at the direction of UGH** and solely on its **behalf**" (¶ 50), and/or "Defendants, their agents, or persons/entities acting **on Defendants' behalf** transmitted unwanted solicitation telephone calls" (¶ 170). Thus, pursuant to Judge Munley's analysis in *Hartley-Culp*, Plaintiffs have

sufficiently alleged UHG's vicarious liability for the agents' placing calls at its direction and/or on its behalf.

Notably, nowhere in his opinion did Judge Munley require the *Hartley-Culp* plaintiff to plead an agency relationship between the defendant and the third-party call-maker to establish vicarious liability, as UHG erroneously claims is required. That is because doing so is not required to establish vicarious liability under the TCPA.

*Abramson* is also instructive. The Defendant there argued, as UHG does here, "that no agency relationship existed between itself and its telemarketing contractor such that it can be held vicariously liable for the third-party's acts." *Abramson*, 2018 U.S. Dist. LEXIS 212285, at *9. The defendant contested "that the persons placing the call were 'independent contractors' and [Defendant] 'never had control over the business activities' of the independent contractors." *Id*. The court denied this argument outright and explained:

> while a [defendant] does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of [the TCPA] that are committed by third-party telemarketers.

*Id*. Based on this reasoning, the court held that allegations that the defendant "outsource[d] its telemarketing and authorizes those third-parties to enter into contracts on its behalf" were sufficient to "state a plausible claim of vicarious

liability, regardless of the job title [Defendant] assigns to the telemarketers with which it contracts," without assessing agency. *Abramson*, 2018 U.S. Dist. LEXIS 212285, at *10. Thus, UHG's attempt to point fingers at "independent contractors" (Def. Br. at 4, 10, 12) to avoid vicarious liability is unavailing, and Plaintiffs' allegations that "UHG uses its wholly owned 'marketing arm,' UHA … to solicit business from consumers" "on behalf of UHG" (*see, e.g.*, ¶¶ 2-5) are sufficient—as in *Abramson*—to establish UHG's vicarious liability.

Despite these bedrock legal principles set forth by this Court and other courts within the Third Circuit, UHG cites six cases—not one of which is from a court within the Third Circuit, let alone this Court—to erroneously suggest that Plaintiff must allege facts supporting an agency theory in order to plead that UHG is vicariously liable. Def. Br. at 25-27. The reason UHG does not cite a single case from the Third Circuit to support this contention is because those courts have held the exact opposite: that UHG is liable for calls made on its behalf even if it did not make the calls, and thus have uniformly refrained from requiring TCPA plaintiffs to plead an agency relationship between the defendants and third-party telemarketers in order to hold the defendants vicariously liable for calls made on their behalves. As such, UHG's vicarious liability arguments based upon these out-of-circuit cases are inapposite.

### D. This Court has Specific Personal Jurisdiction over UHG

"A federal district court may assert personal jurisdiction over a nonresident, such as [UHG], to the extent authorized by the state's long-arm statute." *Abramson*, 2018 U.S. Dist. LEXIS 212285, at *10-11 (citing FED.R.CIV.P. 4(k); *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007)). "Pennsylvania's long-arm statute provides for jurisdiction 'to the fullest extent' permitted under the Due Process Clause of the Fourteenth Amendment." *Id*. (citing 42 Pa.C.S. § 5322(a)-(b)). To establish specific jurisdiction, the plaintiff must prove:

> (1) the defendant has purposefully directed his activities at the forum; (2) the plaintiff's claim arises out of or relates to at least one of those specific activities, and (3) that the court's exercise of jurisdiction over the defendant comports with traditional notions of fair play and substantial justice.

*Id*. at *11 (quoting *Marten*, 499 F.3d at 296).

In *Abramson*, the defendant argued that the court lacked personal jurisdiction over it to hear the plaintiff's TCPA claims because it (like UHG) was a Texas corporation with no presence in or contacts with Pennsylvania. *Id*. at *1, 13-14. The defendant argued that because the calls at issue were made by third-party telemarketing companies, rather than Defendant itself, it did not direct any activities at Pennsylvania sufficient to establish specific jurisdiction. *Id*. at *1, 11-14. The court rejected both arguments, and held that Plaintiffs' allegations satisfied all three elements required for pleading specific jurisdiction. *Id*. at *11-14.

*First*, the court held that because the plaintiff "sufficiently alleged that [defendant] can be held liable for the conduct of the telemarketing companies [that made calls on its behalf] … it is reasonable to infer … that [Defendant] purposefully aimed its conduct at Pennsylvania by contacting directly [Plaintiff]'s Pennsylvania mobile and residential telephone numbers" and that "[c]learly, [Plaintiff]'s claims arise out of that activity" even though the third-party telemarketers placed the calls, not the Defendant. *Id.* at *12. Thus, Plaintiff Ford's allegations that Defendants—or third-parties on their behalf and/or at their direction—directly contacted his cell phone with a Pennsylvania area code (¶¶ 10, 94-122) likewise establish that Defendants purposefully aimed their conduct at Pennsylvania, and Plaintiff Ford's allegations arise out of this conduct. *See, e.g.*, *Abramson v. Caribbean Cruise Line, Inc.*, No. 2:14-cv-00435, 2014 U.S. Dist. LEXIS 88336 at *23-24 (W.D. Pa. June 23, 2014) (holding, "By initiating a call to such a number, it can be said that Defendant CCL 'expressly aimed their conduct at Pennsylvania' because the number was associated with the State of Pennsylvania"); *Abramson v. CWS Apartment Homes, LLC*, No. 16-426, 2016 U.S. Dist. LEXIS 146627, at *10-11 (W.D. Pa. Oct. 24, 2016) (holding, "District courts across the country have found purposeful direction based on allegations a defendant sent its telemarketing call to a number bearing the state's area code … We likewise find purposeful direction based on Abramson's averment

CWS sent the text message to his cell phone bearing a Pennsylvania area code").[10] For this same reason, UHG's argument that "[a]s Plaintiffs only allege conduct by third parties, and none by [UHG] whatsoever, they allege no contacts between [UHG] and Pennsylvania"—such that personal jurisdiction is lacking (Def. Br. at 9)—also fails.[11] Likewise, this authority renders the content of the Kober Declaration irrelevant.

[10] Courts across the country have repeatedly held that defendants who direct unsolicited communications to consumers within a state, in violation of the TCPA, are sufficient contacts to create jurisdiction within that state over such defendants. *See, e.g.*, *Rinky Dink Inc. v. Electronic Merchant Systems Inc.*, No. C13-1347-JCC, 2014 WL 5880170, at *2–3 (W.D. Wash. Sept. 30, 2014) (finding express aiming where defendant transmitted calls to telephone numbers with Washington area codes, even if at the direction of another party); *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014) (finding that a defendant who intentionally texts a cell phone number with a California area code in violation of the TCPA has expressly aimed its conduct at California); *Heidorn v. BDD Marketing & Mgt. Co., LLC*, Case No. C-13-00229 JCS, 2013 WL 6571629 at *7–8 (N.D. Cal. Aug. 19, 2013) (finding specific jurisdiction where plaintiff received unsolicited emails and phone calls at a number with a California area code); *Baker v. Caribbean Cruise Line*, No. CV 13-8246-PCT-PGR, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014) (finding specific jurisdiction established where defendant made calls to plaintiff's Arizona number).

[11] In support of this argument, UHG cites *Cardenas v. Spinnaker Resorts, Inc.*, No. CV 16- 2466 (JLL), 2017 WL 3315285, at *4 (D.N.J. Aug. 3, 2017). This case is readily distinguishable, however, because there the parties engaged in jurisdiction discovery, which unearthed the fact that the telemarketers were not agents of the Defendant for jurisdiction purposes; therefore, the Defendant did not purposefully direct its activities at the forum state. *Id.* at *11-13. Here, in contrast, no jurisdiction discovery has been performed, let alone unveiled that there is no relationship between the telemarketers and UHG.

*Second*, the court assessed whether its "exercise of jurisdiction over the defendant comports with traditional notions of fair play and substantial justice," and began its analysis by citing the Supreme Court's instruction in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985), that "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Abramson*, 2018 U.S. Dist. LEXIS 212285 at *10-14. The court held that because the Defendant purposefully directed unsolicited communications to consumers in Pennsylvania, it "should reasonably be expected to be haled into this [c]ourt and that [Plaintiff] and Pennsylvania have a substantial interest in resolving this matter in this forum." *Id.* at *14. Thus, pursuant to *Abramson*, because Defendants here directed the same activities (i.e., unsolicited communications) at Plaintiff Ford, a Pennsylvania resident, they too should reasonably expect to be haled into Pennsylvania courts, and Pennsylvania and Plaintiff Ford, alike, have a substantial interest in resolving this matter in this Court.[12]

[12] Furthermore, based on the holding in *Abramson*, UHG's arguments that asserting personal jurisdiction over UHG would violate due process also fail. Def. Br. at 17-19. UHG's reliance on *Hicks v. Health Ins. Innovations, Inc.*, No. CV173344SDWLDW, 2017 WL 6764054, at *4 (D.N.J. Dec. 20, 2017), *report and recommendation adopted*, No. 17-3344 (SDW) (LDW), 2018 WL 325308 (D.N.J. Jan. 8, 2018) is unavailing because there the plaintiff was a resident of Florida, not the forum state of New Jersey, when he received the call at issue.

Because Plaintiff Ford's allegations are analogous to those in *Abramson*, this Court should similarly hold that UHG is subject to specific personal jurisdiction. Nothing further is required, and UHG's additional personal jurisdiction arguments should therefore be rejected. For instance, because courts within the Third Circuit—such as *Abramson* as explained above—have held that third-party telemarketers' calls made on behalf of a Defendant to consumers in Pennsylvania are sufficient to establish specific personal jurisdiction, UHG's arguments based on the "presumption of separateness" of UHG as a "parent" and UHA as a "subsidiary" are inapposite. Def. Br. at 10-13.

As noted above, UHG spends four pages arguing that personal jurisdiction is further lacking because "Plaintiffs have not offered any facts to support the existence of an agency relationship between [UHG] and the individuals who allegedly contacted Plaintiffs." Def. Br. at 13-17. UHG's argument is perplexing in light of multiple holdings from courts within the Third Circuit, including this Court, uniformly holding that plaintiffs alleging violations of the TCPA are ***not*** required to plead an agency relationship between the call-maker and the entity on whose behalf the calls are made. *See, e.g.*, *Hartley-Culp*, 52 F. Supp. 3d at 702-03 (holding "that the TCPA can impose liability directly … upon any person or entity on whose behalf a third party places a call in violation of [the TCPA]). For further example, very recently in *Kline*, the defendant "argued that [plaintiff] ha[d] failed

to sufficiently allege that the maker of the … call was acting as [defendant]'s agent," but this Court ignored that argument because "[the plaintiff] alleged that the … call was made by a 'third part[y] directed by' [the defendant]. *Kline*, 2018 U.S. Dist. LEXIS 157816, at *3-4.

Thus, the foregoing authorities are clear that Plaintiffs are not required to plead an agency relationship between UHG and the telemarketers making calls on its behalf to establish personal jurisdiction because "the FCC has ruled that 'a [defendant] on whose behalf an autodialed … call is made to a wireless number bears the responsibility for any violation of the Commission's rules'" such that "[c]alls placed by a third party … are treated as if the [defendant] itself placed the call." *Hartley-Culp*, 52 F. Supp. 3d at 702-03. Notably, in UHG's briefing on this issue, it does not cite a single case from the Third Circuit to support its claim that Plaintiffs were required to plead an agency relationship between Defendants and the third-party telemarketers; that is because that is not the standard in this Court and UHG cannot overcome this Court's recent holdings in *Kline* and *Hartley-Culp*.

### E. UHG Concedes that this Court Recently Held that *Bristol-Myers Squibb* Does Not Apply to Class Actions

In *Bristol-Myers Squibb*, the Supreme Court held—in a nationwide mass tort action for alleged injuries from the drug Plavix—that a California state court could not exercise specific jurisdiction over non-California residents where there was not an "adequate link" between the non-residents claims and California. *Bristol-Myers*

*Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2015). UHG relies on this mass tort opinion to argue that (1) the Court lacks jurisdiction over Pershwitz's claims (Def. Br. at 16-17); and (2) the Court cannot certify a nationwide class because it lacks personal jurisdiction over non-resident class members' claims (Def. Br. at 19-22).

As recently as June 26, 2019, however, this Court held that *Bristol-Myers Squibb* does not apply to class actions. *See Gress v. Freedom Mortg. Corp.*, 386 F. Supp. 3d 455, 464-65 (M.D. Pa. 2019) (declining to apply *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (U.S. 2017) to class actions). UHG concedes that in its brief: "Courts in this District have refused to apply *Bristol-Myers* to class actions thus far." Def. Br. at 21 (citing *Gress*, 386 F. Supp. 3d at 465). Therefore, UHG's four pages of arguments that "the Court is precluded from certifying a nationwide class because the Court lacks personal jurisdiction over UHG" based on the Supreme Court's holding in *Bristol-Myers Squibb* (Def. Br. at 19-22) are directly contrary to this Court's binding precedent and cannot stand. *See Gress*, 386 F. Supp. 3d at 463-65 (rejecting the Defendant's argument "that the claims of non-Pennsylvania putative class members based on the laws of other states must be dismissed for lack of personal jurisdiction" pursuant to *Bristol-Myers Squibb*).

For this same reason, UHG's argument that this Court lacks personal jurisdiction over Mr. Pershwitz because *Bristol-Myers Squibb* held that "[t]he mere fact that other plaintiffs … allegedly sustained the same injuries [in the forum] as did the nonresidents – does not allow the State to assert specific jurisdiction over the nonresidents' claims" (Def. Br. at 15-17) similarly fails. Indeed, UHG cites not a single case from this Court in support for this argument. *See id.* Because it cannot, due to this Court's holding in *Gress* that *Bristol-Myers Squibb* does not apply to class actions such as this.

## V. CONCLUSION

For all of these reasons, the Court should deny UHG's motion to dismiss. If the Court grants any part of UHG's motion, Plaintiffs respectfully request that it do so without prejudice and grant Plaintiffs leave to amend pursuant to Rule 15(a)(2) to cure any deficiencies. Plaintiffs also seek an opportunity to conduct personal jurisdiction discovery if the Court deems their allegations to be insufficient.

Respectfully submitted,

Dated: October 30, 2019

By: ______________________________

Benjamin F. Johns (PA ID No. 201373)
Mark B. DeSanto (admitted *pro hac vice*)
Email: bfj@chimicles.com
mbd@chimicles.com
Chimicles Schwartz
Kriner & Donaldson-Smith LLP
361 W. Lancaster Avenue

Haverford, PA 19041
Telephone: 610-642-8500
Facsimile: 610-649-3633

Stefan Coleman (admitted *pro hac vice*)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Attorneys for Plaintiffs
and the Putative Class*

## CERTIFICATION PURSUANT TO MIDDLE DISTRICT OF PENNSYLVANIA LOCAL RULE 7.8(b)(2)

On September 30, 2019, the Court granted Plaintiffs leave to file this brief in excess of the 5,000 word limit set forth in Local Rule 7.8(b), but not to exceed 6,500 words. *See* ECF No. 29. Pursuant to Local Rule 7.8(b)(2), the undersigned hereby certifies that this brief contains 6,230 words, exclusive of the caption page, table of contents, table of authorities, signature blocks, and certificates.

Benjamin F. Johns
PA Bar No. 201373

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 30, 2019, a true and correct copy of the above and foregoing was filed with the Clerk of Court via the Court's CM/ECF system for electronic service on all counsel of record.

Benjamin F. Johns
PA Bar No. 201373