# EXHIBIT "A"

# EXHIBITS TABLE OF CONTENTS

Exhibit A: Declaration of Jaime Guli ........................................................................1
Exhibit A-1: Sean Duffie Independent Contractor Agreement ................................4
Exhibit A-2: Karen Edwards Independent Contractor Agreement............................9
Exhibit A-3: Jason McLeod Independent Contractor Agreement ..........................14

Ex A

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated<br><br>Plaintiff,<br><br>v.<br><br>AGENTRA, LLC, XPERT INSURANCE SERVICES, INC., KAREN MARIE EDWARDS and SEAN T. DUFFIE<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Case No. 2:18-cv-00615-RCM** |

**DECLARATION OF JAIME GULI**

I, Jaime Guli, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over the age of 18 and am otherwise *sui juris*. I have personal knowledge of all matters stated herein, each of which are true and correct. I am a resident of the State of Texas.

2. I am the Chief Operating Officer of Agentra, LLC, which is a Texas corporation with its principal place of business in Texas.

3. I have personal knowledge of Agentra's business records.

4. I affirm that Agentra (a) makes and keeps a record of its outbound telephone calls in the course of its regularly conducted business activity; (b) the record of Agentra's outbound telephone calls is routinely made and kept in the course of its business; and (c) the record of outbound telephone calls is made at or near the time an outbound telephone call occurs.

5. Agentra has a record of all outbound telephone calls placed on March 7, 2018 and May 11, 2018.

6. Agentra ran a search on its outbound telephone calls record using search parameters consisting of the date of the alleged calls, March 7, 2018 and May 11, 2018, as well as the first 6 digits of Plaintiff's telephone number, as provided by Plaintiff in his Complaint.

7. Agentra's outbound telephone calls record did not contain or reflect any entry of a call placed to Plaintiff on March 7, 2018 or May 11, 2018. Agentra has no reason to believe that Plaintiff received any calls from Agentra on the dates alleged.

8. I also affirm that Agentra (a) makes and keeps a record of its outbound e-mail and mail correspondence in the course of its regularly conducted business activity; (b) the record of

Agentra's e-mail and mail correspondence is routinely made and kept in the course of its business; and (c) the record of Agentra's email and mail correspondence is made at or near the time outbound e-mail or mail correspondence is sent.

9. Agentra has a record of all outbound e-mail and mail correspondence sent from March 1, 2018 through August 1, 2018.

10. Agentra ran a search of its outbound e-mail and mail correspondence record using search parameters consisting of the time period of March 1, 2018 through August 1, 2018 and Plaintiff's name Stewart Abramson and his location of Pennsylvania.

11. Agentra's outbound e-mail and mail correspondence record did not contain or reflect any entry of any e-mail or mail correspondence sent to Plaintiff Stewart Abramson. Agentra has no reason to believe that Plaintiff received any correspondence from Agentra.

12. I also affirm that Agentra, LLC has never employed Sean Duffie as an employee and that Mr. Duffie was not a lawful agent of Agentra, LLC with regard to the acts and omissions of which he has been accused by Plaintiff. Agentra, LLC contracted with Mr. Duffie strictly on a limited independent contractor basis.

13. Attached hereto as Exhibit 1 is a true and correct copy of Agentra LLC's independent contractor agreement with Sean Duffie. I affirm that this is the only agreement that Defendant has entered into with Sean Duffie.

14. I also affirm that Agentra, LLC has never employed Karen Edwards as an employee and that Ms. Edwards was not a lawful agent of Agentra, LLC with regard to the acts and omissions of which she has been accused by Plaintiff. Agentra, LLC contracted with Ms. Edwards strictly on a limited independent contractor basis.

15. Attached hereto as Exhibit 2 is a true and correct copy of Agentra LLC's independent contractor agreement with Karen Edwards. I affirm that this is the only agreement that Defendant has entered into with Karen Edwards.

16. I also affirm that Agentra, LLC has never employed XPert Insurance Services, Inc. as an employee and XPert Insurances Services, Inc. was not a lawful agent of Agentra, LLC with regards to the acts and omissions of which it has been accused by Plaintiff.

17. I affirm that Agentra, LLC contracted with Jason McLeod, owner of XPert Insurance Services, Inc., strictly on an independent contractor basis. Agentra has never employed Jason McLeod as an employee and Mr. Duffie was not a lawful agent of Agentra, LLC with regards to the acts and omissions of which he has been accused by Plaintiff.

18. Attached hereto as Exhibit 3 is a true and correct copy of Agentra LLC's independent contractor agreement with Jason McLeod. I affirm this is the only agreement that Defendant has entered into with Jason McLeod.

19. I also affirm that Agentra, LLC had no knowledge of the fact that Co-Defendants reached out to Plaintiff in a manner that violated the TCPA or in a manner that was otherwise inconsistent with federal regulations

20. I also affirm that none of Sean Duffie, Karen Edwards and Jason McLeod obtained approval from Agentra, LLC prior to distributing to Plaintiff any piece of advertising of any kind or nature which bears the name Agentra Health.

Under 28 U.S.C. § 1746 I, Jaime Guli, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 3, 2018.

Declarant Jaime Guli

Ex A-1

September 21, 2017 at 2:25:01 PM

First Name: Sean
Last Name: Duffie
Address 1: 1451 W Cypress Creek Rd
City: Ft Lauderdale
State: FL
Zip: 33309
Phone: (754) 312-7389
Email: greathealthplanadvisors@gmail.com

Signup Password: PARTNER / IMO1 / 30

**Agreement**

**FOR MORE INFORMATION, PLEASE CONTACT:**

• CRS Marketing LLC • Scott Shapiro • Phone: (954) 790-2368 • E-Mail: shapscott@hotmail.com

**COMPENSATION**

Once registration is complete, your compensation agreement and commission schedule will be sent to the email you've provided. This document must be completed, digitally signed and returned via email, before your contract with Agentra will be effective.

**AGREEMENT**

GENERAL AGENT AGREEMENT

This General Agent Agreement ("Agreement") and the Commission Schedule attached hereto, is made by and between individual stated below ("Agent") and Agentra LLC (hereinafter referred to as "Agentra Health" or "the Company") on date of signature for the purpose of conducting insurance sales and marketing activities.

Agentra Health is an insurance sales agency that sells and markets insurance products of various insurance companies. Agentra Health desires to engage the services of General Agent to market and sell the insurance policies marketed by Agentra Health.

Before soliciting any potential customer or client, General Agent agrees to obtain and maintain insurance and/or other licenses required by law for the solicitation of insurance sales.

I. INDEPENDENT CONTRACTOR

It is expressly agreed that the relationship intended by this Agreement between General Agent and Agentra Health shall be that of an independent contractor only, and nothing in this Agreement is intended to create an employer/employee relationship between General Agent and Agentra Health. As an independent contractor, General Agent will decide when, where and the manner and means to conduct his/her business activities. General Agent may be provided models and guidelines from time-to-time, however, General Agent will have discretion to set business hours and schedules. As an independent contractor for Agentra Health, General Agent is permitted to engage in other insurance business activities, so long as those efforts do not utilize Agentra Health's confidential and proprietary information and/or General Agent does not engage in any business activities which would violate the Agreement Not to Solicit provision set forth herein.

General Agent agrees that he or she will strictly comply with all applicable federal and state laws, rules, and regulations in the performance of his/her duties.

As an independent contractor, General Agent will be responsible for payment of all expenses and fees incurred in the solicitation of insurance for Agentra Health. These expenses include, but are not limited to: business overhead, means of transportation, all equipment and materials incidental to performing insurance sales, all communication expenses (including phone, cell phone and internet expenses), advertisements (subject to the limitations set forth below), state and federal income tax, self-employment tax, social security tax, unemployment tax and workers' compensation. As an independent contractor, General Agent is permitted to expend any resources as General Agent sees fit to conduct his/her business activities.

General Agent also agrees that he/she will maintain all necessary licenses and errors and omissions insurance coverage to perform his/her insurance sales and marketing duties, and that General Agent will be responsible for all costs associated with obtaining and maintaining that license(s) in good standing.

General Agent shall defend, indemnify, and hold Agentra Health harmless from any loss or liability resulting from fraudulent or unauthorized acts or omissions of General Agent and for any liability that shall result from Agent's failure to pay any taxes, insurance, or fees.

II. LEADS

In exchange for General Agent's promises herein, Agentra Health may provide names of prospective policy holders (hereinafter referred to as "leads"). General Agent agrees that all leads and related

materials are confidential and proprietary information of Agentra Health. In exchange for receiving leads, General Agent agrees not to disclose to any third party the identities of or information about leads received from Agentra Health. General Agent acknowledges that Agentra Health is making no representation as to the number of leads it may make available to General Agent, and Agentra Health does not guarantee or warrant the number of leads that General Agent may expect to receive at any time or the likelihood that any such leads will result in the purchase of insurance through Agent.

III. ADVERTISING

Due to various insurance laws and regulations, General Agent agrees that he/she will request and obtain approval from Agentra Health prior to distributing any piece of advertising of any kind or nature which bears the name Agentra Health. General Agent must also have prior written approval from Agentra Health for any advertising where the Company name is used to solicit business on behalf of Agentra Health, as well as the prior written approval from any carrier whose name is used in any advertising used to solicit business on behalf of Agentra Health.

IV. COMMISSIONS

Agentra Health agrees to pay General Agent, during the continuance of this Agreement, the compensation set forth in the Commission Schedule(s) attached hereto. Increases in premium rates will be considered in the calculation of renewal commissions provided the insurance carrier pays Agentra Health on the same premium increases. Agentra Health will provide as much notice of this change as possible but not less than 45-days advance written notice.

In the event Agentra Health shall refund premiums under any policy to an insured for any reason, General Agent shall immediately repay to Agentra Health the amount of any advance or unearned commission paid to him/her on the premium so refunded.

The General Agent will receive commissions as earned.

In the event of termination of this Agreement without cause by Agentra Health or by General Agent, General Agent shall be entitled to commissions as set forth in applicable commission schedule(s).

If this Agreement is terminated for cause, as that term is defined below, all of Agentra Health's obligations herein shall cease and terminate, including any obligation to pay any renewal commissions.

In the event of the death of the General Agent while this contract is in effect, any renewals will be paid to the estate of the General Agent.

If in any calendar year the amount of vested renewals is equal to or less than $600.00, the company shall have the right to discontinue all such payments for future years by the payment of a single lump sum settlement equal to two (2) times such amount.

V. TERMINATION

This Agreement may be cancelled for cause if at any time Agentra Health has a reasonable basis to conclude that Agent: (i) while acting as general agent, engaged in misconduct, fraud, dishonesty by statement or omission, or advised or knowingly allowed another to make misrepresentations to Agentra Health or any agent, applicant or policyholder; (ii) breached any provision of this Agreement; (iii) prejudiced the interest of Agentra Health or any client; and/or (iv) withheld or made

unauthorized use of any property or materials belonging to Agentra Health, a client or insurer.

VI. CONFIDENTIALITY

General Agent agrees that Agentra Health will provide him/her with certain confidential and proprietary information. Such information is provided by Agentra Health to allow General Agent to perform services under this Agreement and to sell and market insurance products on behalf of Agentra Health. Agentra Health's confidential information includes, but is not limited to, training manuals, information about potential or actual policyholders (including their coverage and rate information), and other information related to policyholders' specific preferences and needs, and information related to insurance and/or other products marketed by Agentra Health. General Agent also agrees not to use this type of information in any way, either during the term of this Agreement, or at any time thereafter, except as required for the benefit of Agentra Health.

General Agent agrees that within thirty days (30) days of termination of this Agreement to return all the confidential information of Agentra Health to Agentra Health's Home Office. General Agent understands that the failure to return the confidential information within such period shall cause Agentra Health to terminate the Agreement "for cause" (as that term is defined herein).

VII. MISCELLANEOUS

Entire Agreement. This Agreement and attachments referenced herein (including, but not limited to addendums, Commission and Vesting schedules, and the Arbitration Policy referenced below) constitutes the entire agreement between the parties and sets forth the rights, duties and obligations of each as to the subject matters contained herein. This Agreement supersedes any and all pervious contracts between the parties. Any modifications of this Agreement must be in writing, signed by General Agent and an authorized representative of Agentra Health.

Arbitration. Any controversy, claim or controversy related to this Agreement shall be resolved through binding arbitration. The Arbitration Policy sets forth the scope and process and is incorporated herein.

Severability. If any provision of this Agreement is declared or made unenforceable, the other provisions shall remain in force and effect.

Survival. The obligations of the General Agent under sections I, V-VI shall survive the termination of this Agreement regardless of the cause of termination.

Failure to Enforce. Failure to enforce any provision of this Agreement does not constitute a waiver of that provision or any other provision of this Agreement.

Assignment. General Agent may not assign this Agreement or right or obligation without the prior written consent of Agentra Health.

Notices. Any notice to be given to Agentra Health concerning this Agreement shall be in writing and shall be delivered to 15280 Addison Rd, Suite 250, Addison, TX 75001. If any notice is to be given to Agent, it will be sent to the last address provided by General Agent in the records of Agentra Health. Either party may change their address by providing notice hereunder.

Choice of Law. This Agreement shall be governed by Texas law, excluding its choice of law rules.

Venue. By executing this Agreement, and by General Agent's relationship with Agentra Health through this Agreement, General Agent agrees that any dispute between General Agent and Agentra Health regarding or concerning this Agreement shall be conducted in Dallas County, Texas and pursuant to the Arbitration Policy referenced herein.

General Agent agrees that as an independent contractor, General Agent has the sole and exclusive power and right to determine when, where and the manner and means by which General Agent conducts business activities. It is understood and agreed that this Agreement does not and is not intended to give Agentra Health the power or right to control the material details of the work General Agent performs in connection with this Agreement.

The parties to this Agreement intend and agree that this Agreement may be executed by electronic signature by any of the parties with the same effectiveness as a written signature, pursuant to the Texas Uniform Electronic Transactions Act and the Federal E-Sign Act.



Name: Sean Duffie

Date: September 21, 2017 at 2:25:01 PM

IP Address: 10.10.59.254

System: Mozilla/5.0 (Windows NT 6.1; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/60.0.3112.113 Safari/537.36

December 11, 2017 at 11:50:04 PM

First Name: Karen
Last Name: Edwards
Address 1: 25061 Via las lomas
City: Murrieta
State: CA
Zip: 92562
Phone: (951) 805-5688
Email: kedwards323@aol.com

Signup Password: Leader / MGA1 / 22.5

**Agreement**

**FOR MORE INFORMATION, PLEASE CONTACT:**

• Agentra Health Care Partner Program • Phone: 800-656-2204 • E-Mail: memberservices@agentra.com

**COMPENSATION**

Once registration is complete, your compensation agreement and commission schedule will be sent to the email you've provided. This document must be completed, digitally signed and returned via email, before your contract with Agentra will be effective.

**AGREEMENT**

GENERAL AGENT AGREEMENT

This General Agent Agreement ("Agreement") and the Commission Schedule attached hereto, is made by and between individual stated below ("Agent") and Agentra LLC (hereinafter referred to as "Agentra Health" or "the Company") on date of signature for the purpose of conducting insurance sales and marketing activities.

Agentra Health is an insurance sales agency that sells and markets insurance products of various insurance companies. Agentra Health desires to engage the services of General Agent to market and sell the insurance policies marketed by Agentra Health.

Before soliciting any potential customer or client, General Agent agrees to obtain and maintain insurance and/or other licenses required by law for the solicitation of insurance sales.

I. INDEPENDENT CONTRACTOR

It is expressly agreed that the relationship intended by this Agreement between General Agent and Agentra Health shall be that of an independent contractor only, and nothing in this Agreement is intended to create an employer/employee relationship between General Agent and Agentra Health. As an independent contractor, General Agent will decide when, where and the manner and means to conduct his/her business activities. General Agent may be provided models and guidelines from time-to-time, however, General Agent will have discretion to set business hours and schedules. As an independent contractor for Agentra Health, General Agent is permitted to engage in other insurance business activities, so long as those efforts do not utilize Agentra Health's confidential and proprietary information and/or General Agent does not engage in any business activities which would violate the Agreement Not to Solicit provision set forth herein.

General Agent agrees that he or she will strictly comply with all applicable federal and state laws, rules, and regulations in the performance of his/her duties.

As an independent contractor, General Agent will be responsible for payment of all expenses and fees incurred in the solicitation of insurance for Agentra Health. These expenses include, but are not limited to: business overhead, means of transportation, all equipment and materials incidental to performing insurance sales, all communication expenses (including phone, cell phone and internet expenses), advertisements (subject to the limitations set forth below), state and federal income tax, self-employment tax, social security tax, unemployment tax and workers' compensation. As an independent contractor, General Agent is permitted to expend any resources as General Agent sees fit to conduct his/her business activities.

General Agent also agrees that he/she will maintain all necessary licenses and errors and omissions insurance coverage to perform his/her insurance sales and marketing duties, and that General Agent will be responsible for all costs associated with obtaining and maintaining that license(s) in good standing.

General Agent shall defend, indemnify, and hold Agentra Health harmless from any loss or liability resulting from fraudulent or unauthorized acts or omissions of General Agent and for any liability that shall result from Agent's failure to pay any taxes, insurance, or fees.

II. LEADS

In exchange for General Agent's promises herein, Agentra Health may provide names of prospective policy holders (hereinafter referred to as "leads"). General Agent agrees that all leads and related

materials are confidential and proprietary information of Agentra Health. In exchange for receiving leads, General Agent agrees not to disclose to any third party the identities of or information about leads received from Agentra Health. General Agent acknowledges that Agentra Health is making no representation as to the number of leads it may make available to General Agent, and Agentra Health does not guarantee or warrant the number of leads that General Agent may expect to receive at any time or the likelihood that any such leads will result in the purchase of insurance through Agent.

III. ADVERTISING

Due to various insurance laws and regulations, General Agent agrees that he/she will request and obtain approval from Agentra Health prior to distributing any piece of advertising of any kind or nature which bears the name Agentra Health. General Agent must also have prior written approval from Agentra Health for any advertising where the Company name is used to solicit business on behalf of Agentra Health, as well as the prior written approval from any carrier whose name is used in any advertising used to solicit business on behalf of Agentra Health.

IV. COMMISSIONS

Agentra Health agrees to pay General Agent, during the continuance of this Agreement, the compensation set forth in the Commission Schedule(s) attached hereto. Increases in premium rates will be considered in the calculation of renewal commissions provided the insurance carrier pays Agentra Health on the same premium increases. Agentra Health will provide as much notice of this change as possible but not less than 45-days advance written notice.

In the event Agentra Health shall refund premiums under any policy to an insured for any reason, General Agent shall immediately repay to Agentra Health the amount of any advance or unearned commission paid to him/her on the premium so refunded.

The General Agent will receive commissions as earned.

In the event of termination of this Agreement without cause by Agentra Health or by General Agent, General Agent shall be entitled to commissions as set forth in applicable commission schedule(s).

If this Agreement is terminated for cause, as that term is defined below, all of Agentra Health's obligations herein shall cease and terminate, including any obligation to pay any renewal commissions.

In the event of the death of the General Agent while this contract is in effect, any renewals will be paid to the estate of the General Agent.

If in any calendar year the amount of vested renewals is equal to or less than $600.00, the company shall have the right to discontinue all such payments for future years by the payment of a single lump sum settlement equal to two (2) times such amount.

V. TERMINATION

This Agreement may be cancelled for cause if at any time Agentra Health has a reasonable basis to conclude that Agent: (i) while acting as general agent, engaged in misconduct, fraud, dishonesty by statement or omission, or advised or knowingly allowed another to make misrepresentations to Agentra Health or any agent, applicant or policyholder; (ii) breached any provision of this Agreement; (iii) prejudiced the interest of Agentra Health or any client; and/or (iv) withheld or made

unauthorized use of any property or materials belonging to Agentra Health, a client or insurer.

VI. CONFIDENTIALITY

General Agent agrees that Agentra Health will provide him/her with certain confidential and proprietary information. Such information is provided by Agentra Health to allow General Agent to perform services under this Agreement and to sell and market insurance products on behalf of Agentra Health. Agentra Health's confidential information includes, but is not limited to, training manuals, information about potential or actual policyholders (including their coverage and rate information), and other information related to policyholders' specific preferences and needs, and information related to insurance and/or other products marketed by Agentra Health. General Agent also agrees not to use this type of information in any way, either during the term of this Agreement, or at any time thereafter, except as required for the benefit of Agentra Health.

General Agent agrees that within thirty days (30) days of termination of this Agreement to return all the confidential information of Agentra Health to Agentra Health's Home Office. General Agent understands that the failure to return the confidential information within such period shall cause Agentra Health to terminate the Agreement "for cause" (as that term is defined herein).

VII. MISCELLANEOUS

Entire Agreement. This Agreement and attachments referenced herein (including, but not limited to addendums, Commission and Vesting schedules, and the Arbitration Policy referenced below) constitutes the entire agreement between the parties and sets forth the rights, duties and obligations of each as to the subject matters contained herein. This Agreement supersedes any and all pervious contracts between the parties. Any modifications of this Agreement must be in writing, signed by General Agent and an authorized representative of Agentra Health.

Arbitration. Any controversy, claim or controversy related to this Agreement shall be resolved through binding arbitration. The Arbitration Policy sets forth the scope and process and is incorporated herein.

Severability. If any provision of this Agreement is declared or made unenforceable, the other provisions shall remain in force and effect.

Survival. The obligations of the General Agent under sections I, V-VI shall survive the termination of this Agreement regardless of the cause of termination.

Failure to Enforce. Failure to enforce any provision of this Agreement does not constitute a waiver of that provision or any other provision of this Agreement.

Assignment. General Agent may not assign this Agreement or right or obligation without the prior written consent of Agentra Health.

Notices. Any notice to be given to Agentra Health concerning this Agreement shall be in writing and shall be delivered to 15280 Addison Rd, Suite 250, Addison, TX 75001. If any notice is to be given to Agent, it will be sent to the last address provided by General Agent in the records of Agentra Health. Either party may change their address by providing notice hereunder.

Choice of Law. This Agreement shall be governed by Texas law, excluding its choice of law rules.

Venue. By executing this Agreement, and by General Agent's relationship with Agentra Health through this Agreement, General Agent agrees that any dispute between General Agent and Agentra Health regarding or concerning this Agreement shall be conducted in Dallas County, Texas and pursuant to the Arbitration Policy referenced herein.

General Agent agrees that as an independent contractor, General Agent has the sole and exclusive power and right to determine when, where and the manner and means by which General Agent conducts business activities. It is understood and agreed that this Agreement does not and is not intended to give Agentra Health the power or right to control the material details of the work General Agent performs in connection with this Agreement.

The parties to this Agreement intend and agree that this Agreement may be executed by electronic signature by any of the parties with the same effectiveness as a written signature, pursuant to the Texas Uniform Electronic Transactions Act and the Federal E-Sign Act.



Name: Karen Edwards

Date: December 11, 2017 at 11:50:04 PM

IP Address: 10.10.59.254

System: Mozilla/5.0 (Windows NT 6.1; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/61.0.3163.100 Safari/537.36

January 3, 2018 at 5:42:35 PM

First Name: Jason
Last Name: McLeod
Address 1: 410 nw 68th ave 110
City: Plantation
State: FL
Zip: 33317
Phone: (561) 952-2133
Email: xpertinsuranceservices@gmail.com

Signup Password: MANAGER / GA4 / 20

**Agreement**

**FOR MORE INFORMATION, PLEASE CONTACT:**

• United Health Affiliates • Kevin Sant • Phone: (954) 297-5317 • E-Mail: kevins6530@gmail.com

**COMPENSATION**

Once registration is complete, your compensation agreement and commission schedule will be sent to the email you've provided. This document must be completed, digitally signed and returned via email, before your contract with Agentra will be effective.

**AGREEMENT**

GENERAL AGENT AGREEMENT

This General Agent Agreement ("Agreement") and the Commission Schedule attached hereto, is made by and between individual stated below ("Agent") and Agentra LLC (hereinafter referred to as "Agentra Health" or "the Company") on date of signature for the purpose of conducting insurance sales and marketing activities.

Agentra Health is an insurance sales agency that sells and markets insurance products of various insurance companies. Agentra Health desires to engage the services of General Agent to market and sell the insurance policies marketed by Agentra Health.

Before soliciting any potential customer or client, General Agent agrees to obtain and maintain insurance and/or other licenses required by law for the solicitation of insurance sales.

## I. INDEPENDENT CONTRACTOR

It is expressly agreed that the relationship intended by this Agreement between General Agent and Agentra Health shall be that of an independent contractor only, and nothing in this Agreement is intended to create an employer/employee relationship between General Agent and Agentra Health. As an independent contractor, General Agent will decide when, where and the manner and means to conduct his/her business activities. General Agent may be provided models and guidelines from time-to-time, however, General Agent will have discretion to set business hours and schedules. As an independent contractor for Agentra Health, General Agent is permitted to engage in other insurance business activities, so long as those efforts do not utilize Agentra Health's confidential and proprietary information and/or General Agent does not engage in any business activities which would violate the Agreement Not to Solicit provision set forth herein.

General Agent agrees that he or she will strictly comply with all applicable federal and state laws, rules, and regulations in the performance of his/her duties.

As an independent contractor, General Agent will be responsible for payment of all expenses and fees incurred in the solicitation of insurance for Agentra Health. These expenses include, but are not limited to: business overhead, means of transportation, all equipment and materials incidental to performing insurance sales, all communication expenses (including phone, cell phone and internet expenses), advertisements (subject to the limitations set forth below), state and federal income tax, self-employment tax, social security tax, unemployment tax and workers' compensation. As an independent contractor, General Agent is permitted to expend any resources as General Agent sees fit to conduct his/her business activities.

General Agent also agrees that he/she will maintain all necessary licenses and errors and omissions insurance coverage to perform his/her insurance sales and marketing duties, and that General Agent will be responsible for all costs associated with obtaining and maintaining that license(s) in good standing.

General Agent shall defend, indemnify, and hold Agentra Health harmless from any loss or liability resulting from fraudulent or unauthorized acts or omissions of General Agent and for any liability that shall result from Agent's failure to pay any taxes, insurance, or fees.

## II. LEADS

In exchange for General Agent's promises herein, Agentra Health may provide names of prospective policy holders (hereinafter referred to as "leads"). General Agent agrees that all leads and related

materials are confidential and proprietary information of Agentra Health. In exchange for receiving leads, General Agent agrees not to disclose to any third party the identities of or information about leads received from Agentra Health. General Agent acknowledges that Agentra Health is making no representation as to the number of leads it may make available to General Agent, and Agentra Health does not guarantee or warrant the number of leads that General Agent may expect to receive at any time or the likelihood that any such leads will result in the purchase of insurance through Agent.

III. ADVERTISING

Due to various insurance laws and regulations, General Agent agrees that he/she will request and obtain approval from Agentra Health prior to distributing any piece of advertising of any kind or nature which bears the name Agentra Health. General Agent must also have prior written approval from Agentra Health for any advertising where the Company name is used to solicit business on behalf of Agentra Health, as well as the prior written approval from any carrier whose name is used in any advertising used to solicit business on behalf of Agentra Health.

IV. COMMISSIONS

Agentra Health agrees to pay General Agent, during the continuance of this Agreement, the compensation set forth in the Commission Schedule(s) attached hereto. Increases in premium rates will be considered in the calculation of renewal commissions provided the insurance carrier pays Agentra Health on the same premium increases. Agentra Health will provide as much notice of this change as possible but not less than 45-days advance written notice.

In the event Agentra Health shall refund premiums under any policy to an insured for any reason, General Agent shall immediately repay to Agentra Health the amount of any advance or unearned commission paid to him/her on the premium so refunded.

The General Agent will receive commissions as earned.

In the event of termination of this Agreement without cause by Agentra Health or by General Agent, General Agent shall be entitled to commissions as set forth in applicable commission schedule(s).

If this Agreement is terminated for cause, as that term is defined below, all of Agentra Health's obligations herein shall cease and terminate, including any obligation to pay any renewal commissions.

In the event of the death of the General Agent while this contract is in effect, any renewals will be paid to the estate of the General Agent.

If in any calendar year the amount of vested renewals is equal to or less than $600.00, the company shall have the right to discontinue all such payments for future years by the payment of a single lump sum settlement equal to two (2) times such amount.

V. TERMINATION

This Agreement may be cancelled for cause if at any time Agentra Health has a reasonable basis to conclude that Agent: (i) while acting as general agent, engaged in misconduct, fraud, dishonesty by statement or omission, or advised or knowingly allowed another to make misrepresentations to Agentra Health or any agent, applicant or policyholder; (ii) breached any provision of this Agreement; (iii) prejudiced the interest of Agentra Health or any client; and/or (iv) withheld or made

unauthorized use of any property or materials belonging to Agentra Health, a client or insurer.

VI. CONFIDENTIALITY

General Agent agrees that Agentra Health will provide him/her with certain confidential and proprietary information. Such information is provided by Agentra Health to allow General Agent to perform services under this Agreement and to sell and market insurance products on behalf of Agentra Health. Agentra Health's confidential information includes, but is not limited to, training manuals, information about potential or actual policyholders (including their coverage and rate information), and other information related to policyholders' specific preferences and needs, and information related to insurance and/or other products marketed by Agentra Health. General Agent also agrees not to use this type of information in any way, either during the term of this Agreement, or at any time thereafter, except as required for the benefit of Agentra Health.

General Agent agrees that within thirty days (30) days of termination of this Agreement to return all the confidential information of Agentra Health to Agentra Health's Home Office. General Agent understands that the failure to return the confidential information within such period shall cause Agentra Health to terminate the Agreement "for cause" (as that term is defined herein).

VII. MISCELLANEOUS

Entire Agreement. This Agreement and attachments referenced herein (including, but not limited to addendums, Commission and Vesting schedules, and the Arbitration Policy referenced below) constitutes the entire agreement between the parties and sets forth the rights, duties and obligations of each as to the subject matters contained herein. This Agreement supersedes any and all pervious contracts between the parties. Any modifications of this Agreement must be in writing, signed by General Agent and an authorized representative of Agentra Health.

Arbitration. Any controversy, claim or controversy related to this Agreement shall be resolved through binding arbitration. The Arbitration Policy sets forth the scope and process and is incorporated herein.

Severability. If any provision of this Agreement is declared or made unenforceable, the other provisions shall remain in force and effect.

Survival. The obligations of the General Agent under sections I, V-VI shall survive the termination of this Agreement regardless of the cause of termination.

Failure to Enforce. Failure to enforce any provision of this Agreement does not constitute a waiver of that provision or any other provision of this Agreement.

Assignment. General Agent may not assign this Agreement or right or obligation without the prior written consent of Agentra Health.

Notices. Any notice to be given to Agentra Health concerning this Agreement shall be in writing and shall be delivered to 15280 Addison Rd, Suite 250, Addison, TX 75001. If any notice is to be given to Agent, it will be sent to the last address provided by General Agent in the records of Agentra Health. Either party may change their address by providing notice hereunder.

Choice of Law. This Agreement shall be governed by Texas law, excluding its choice of law rules.

Venue. By executing this Agreement, and by General Agent's relationship with Agentra Health through this Agreement, General Agent agrees that any dispute between General Agent and Agentra Health regarding or concerning this Agreement shall be conducted in Dallas County, Texas and pursuant to the Arbitration Policy referenced herein.

General Agent agrees that as an independent contractor, General Agent has the sole and exclusive power and right to determine when, where and the manner and means by which General Agent conducts business activities. It is understood and agreed that this Agreement does not and is not intended to give Agentra Health the power or right to control the material details of the work General Agent performs in connection with this Agreement.

The parties to this Agreement intend and agree that this Agreement may be executed by electronic signature by any of the parties with the same effectiveness as a written signature, pursuant to the Texas Uniform Electronic Transactions Act and the Federal E-Sign Act.



Name: Jason McLeod

Date: January 3, 2018 at 5:42:35 PM

IP Address: 10.10.59.254

System: Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/63.0.3239.84 Safari/537.36