**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH FORD, JR., and EDWARD PERSHWITZ, individually, and on behalf of all others similarly situated, | : | 3:19-cv-01091 |
| Plaintiffs, | : | Hon. John E. Jones III |
| v. | : | |
| USHEALTH GROUP, INC., and USHEALTH ADVISORS, LLC, | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

**April 10, 2020**

Presently before the Court[1] is a Motion to Dismiss (the "Motion") (Doc. 31) filed by Defendant, USHealth, Group Inc. ("USHG"). For the reasons that follow, we shall grant the Motion in part and deny the Motion in part.

[1] This matter was recently reassigned to the undersigned following the passing of our revered colleague, the Honorable A. Richard Caputo.

## I. FACTUAL BACKGROUND

We take the following from Plaintiffs' Complaint and assume it to be true, as we must. Where Plaintiffs' Complaint is lacking, we take from the record of the case, as we are permitted to do.[2]

The instant case alleges various violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq. Plaintiffs argue that USHG and, its wholly owned subsidiary, USHealth Advisors, LLC, ("USHA") (collectively, "Defendants") disseminated harassing, unsolicited, prerecorded, and autodialed telemarketing calls and text messages to consumers nationwide. Plaintiffs bring this claim on behalf of themselves and a putative class of those similarly situated.

Plaintiff Joseph Ford Jr. is a citizen of Pennsylvania and maintains a cell phone with a Pennsylvania area code ("570"). (Doc. 25 at ¶ 10). Plaintiff Edward Pershwitz is a citizen of Texas. *Id.* at ¶ 11. Defendant USHG is a corporation, incorporated in Delaware with its principal place of business in Fort Worth, Texas. *Id.* at ¶ 12. USHG sells health products, such as indemnity plans that are underwritten by its wholly-owned subsidiaries: The Freedom Life Insurance Company of America and National Foundation Life Insurance Company. *Id.*

---

[2] *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint [and] matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.").

Defendant USHA, a wholly-owned subsidiary of USHG, is a Texas limited liability company that is headquartered at the same location as USHG. *Id.* at ¶ 13. USHA functions as USHG's "'marketing arm' consisting of approximately 3,500 telemarketing agents nationwide." *Id.* at ¶ 40. These agents send prerecorded and autodialed telephone calls and text messages to consumers "based on 'leads' purchased by Defendants" in an effort "to market, solicit, and/or sell individual insurance underwritten by [USHG's] other wholly-owned subsidiaries, Freedom Life Insurance Company of America and National Foundation Life Insurance Company." *Id.* at ¶¶ 12; 40.

Plaintiffs allege that Defendants violated § 227(b)(1)(A)(iii) of the TCPA which prohibits calls, except calls made for emergency purposes or calls made with prior express consent, using "any automatic telephone dialing system" to telephone numbers assigned to cell phones. *Id.* at ¶ 27. Both Ford and Pershwitz registered their cell phone numbers on "Do Not Call" ("DNC") registries "to avoid receiving unsolicited telemarketing calls and text messages." *Id.* at ¶¶ 95; 124. Nonetheless, both Plaintiffs received a number of unsolicited calls and text messages advertising health insurance plans apparently from agents of USHG and USHA. *Id.* at ¶¶ 97-113; 126-144. Both Ford and Pershwitz maintain that they have never had a relationship with either USHG or USHA, provided their telephone numbers directly to these entities, or invited any information about their services. *Id.* at ¶¶

119; 145-147. These communications have caused both Plaintiffs to suffer "great frustration" over their unsuccessful attempts to make these calls stop, annoyance due to this invasion on their privacy, "wear and tear" on their device's hardware, and the inability to enjoy their phones. *Id.* at ¶¶ 120-121; 148-149. In response, USHG argues that it is shielded from personal jurisdiction in Pennsylvania and any form of liability for Plaintiffs' allegations, because this case is about the actions of "independently licensed insurance agents." (Doc. 32, at 10). These agents are apparently employed by/agents of USHA and have "no relationship" with USHG. *Id.*

USHG filed the instant Motion to Dismiss and its brief in support on September 20, 2019. (Doc. 31; 32). Plaintiffs filed a consolidated brief in opposition, addressing the arguments raised by USHG on October 30, 2019 (Doc. 34). USHG filed its reply brief on November 25, 2019. (Doc. 37). The Motion is therefore ripe for disposition.

## II. DISCUSSION

USHG moves to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) (lack of personal jurisdiction) and Federal Rule of Civil Procedure Rule 12(b)(6) (failure to state a claim upon which relief can be granted). USHG disputes both whether this Court can assert personal jurisdiction over it and whether it can be held liable under the TCPA for the dissemination of

unauthorized calls and text messages by insurance agents who are apparently agents/employees of USHA. Since USHG makes the same argument in its motion to dismiss pursuant to 12(b)(2) and in its motion to dismiss pursuant to 12(b)(6), we shall address this argument in considering whether this Court can assert personal jurisdiction over USHG and need not analyze it under the 12(b)(6) framework. *Ex parte McCardle*, 74 U.S. 506, 514, 19 L. Ed. 264 (1868) ("Without jurisdiction the court cannot proceed at all in any cause."). With respect to Ford's claims, USHG's motion to dismiss shall be denied. With respect to Pershwitz's claims, USHG's motion to dismiss shall be granted. With respect to the claims of the putative class, USHG's motion to dismiss shall be denied as premature.

**a. Rule 12(b)(2) Standard of Review**

Rule 12(b)(2) provides for dismissal of an action where the district court lacks personal jurisdiction over the defendant. A plaintiff must "allege sufficient facts to establish a prima facie case of jurisdiction over the person." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009) (citing *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). In the class action context, "personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named plaintiffs' causes of action." *Chernus v. Logitech, Inc.*, No. CV 17-673(FLW), 2018 WL 1981481, at *3 (D.N.J. Apr. 27, 2018) (internal quotations omitted). The

court generally must take as true the allegations contained in the complaint. *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) (citations omitted). "Once the plaintiff has made out a prima facie case in favor of personal jurisdiction, the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1986)). If the defendant has raised a jurisdictional defense, the plaintiff must "prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc.*, 86 F.3d at 1302. However, if the court declines to hold an evidentiary hearing, the plaintiff only needs to establish a prima facie case of personal jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

**b. Discussion**

Under Federal Rule of Civil Procedure 4(k), "a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." Fed. R. Civ. P. 4(k)(1)(A). "In Pennsylvania, state law provides for jurisdiction 'to the fullest extent allowed under the Constitution of the United States' and 'based on the most minimum contact with [the] Commonwealth allowed under the Constitution of the United States.'" *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting 42 Pa.

Cons. Stat. Ann. § 5322(b)). "Having minimum contacts with another state provides fair warning to a defendant that he or she may be subject to suit in that state." *Id.* (internal quotations omitted). The focus of the personal jurisdiction inquiry is "the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017). There are two types of personal jurisdiction: specific jurisdiction and general jurisdiction. "The court must determine whether to exercise either form of jurisdiction in light of the 'relationship among the defendant, the forum, and the litigation.'" *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 557 (citations omitted).

General personal jurisdiction refers to a court's authority to "hear any and all claims" against an out-of-state entity regardless of whether the plaintiff's claim derives from the defendant's in-forum activities, due to the substantiality of the defendant's contacts with the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 294. Since the Supreme Court's holding in *Daimler*, "courts have found that general jurisdiction extends beyond an entity's state of incorporation and principal place of business *only in the exceptional case* where its contacts with another

forum are so substantial as to render it ‘at home’ in that state.” *Chernus*, 2018 WL 1981481, at *4 (emphasis added) (collecting cases).

Here, we cannot exercise general jurisdiction over USHG, because it is not “at home” in Pennsylvania. USHG is a corporation organized under the laws of Delaware and it maintains its principal place of business in Fort Worth, Texas. *Id.* at ¶ 12. Moreover, Plaintiffs have not alleged sufficient facts to demonstrate that USHG is essentially “at home” in Pennsylvania. Thus, we will proceed to analyze whether there is specific personal jurisdiction over USHG regarding the claims of Plaintiffs, Ford and Pershwitz, individually and on behalf of a similarly situated class.

Specific personal jurisdiction is proper when an entity has “purposefully directed his activities at . . . the forum and the litigation . . . arise[s] out of or relate[s] to those activities.” *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations omitted). This analysis requires the court to “determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.” *Id.* at 476 (internal quotation marks omitted). “For a court to exercise specific jurisdiction over a claim there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.” *Bristol-Myers Squibb*, 137 S. Ct. at 1776 (citing *Goodyear*, 564 U.S. at

919). When no such connection exists, specific jurisdiction is lacking regardless of the extent to which a defendant is conducting other activities in the forum. *Id.* In the class action context, "personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the name plaintiffs' causes of action." *Chernus v. Logitech Inc.*, No. CV 17-673(FLW), 2018 WL 1981481, at *3 (D.N.J. Apr. 27, 2018) (collecting cases).

1. Plaintiff Ford

This Court has specific personal jurisdiction over USHG with respect to Ford's claims because he has demonstrated a connection between the injury that he suffered and USHG's alleged behavior in the forum. Here, Ford is "a citizen of Pennsylvania, and maintains a cell phone whose area code is 570, a Pennsylvania area code." (Doc. 25 at ¶ 10). *See Abramson v. CWS Apartment Homes, LLC*, No. CV 16-426, 2016 WL 6236370, at *4 (W.D. Pa. Oct. 24, 2016) (finding "purposeful direction based on [the plaintiff's] averment [that the defendant] sent the text message to his cell phone bearing a Pennsylvania area code"). In July 2017, Ford registered his cell phone number on a DNC Registry "to avoid receiving unsolicited telemarketing calls and text messages." (Doc. 25 at ¶ 95). Nonetheless, over a time span of eight days, he received "a barrage" of unsolicited and unauthorized phone calls and text messages to his cellular device apparently from agents of USHG and USHA. *Id.* at ¶¶ 96-113. Each of these text messages, phone calls, and voice mails

sought to provide him health insurance quotes in response to an "'insurance inquiry' that he never made." *Id.* at ¶¶ 97-98. For example, on October 28, 2017, he received a message from Angel Williams, who identified himself as an agent of USHG and USHA. *Id.* at ¶ 109. The language of the message included the following: "It's Angel your licensed Advisor with USHealth . . . . My job is to find you the best coverage for the best rate while explaining how the plans work!" *Id.* On at least six occasions, Ford requested that these messages stop, but Defendants continued to contact him. *Id.* at ¶¶ 100; 103; 108; 110; 111; 116. Ford maintains that he has never had a relationship with either USHG, provided his telephone number directly to USHG, or invited any information about its services. *Id.* at ¶¶ 117-119. These communications have caused Ford to suffer "great frustration" over his unsuccessful attempts to make these calls stop," "annoyance, nuisance, invasion of privacy," "wear and tear on [his] phone's hardware and memory," and the inability to enjoy his phone. *Id.* at ¶¶ 120-121. Based on these allegations, Ford has suffered an injury at USHG's hands in the forum, Pennsylvania.

But USHG resists this conclusion on the ground that it has "no relationship" with the "independently licensed insurance agents," ostensibly employed USHA, that made these unauthorized communications. (Doc. 32 at 10). And USHG, as a parent company, cannot be subject to personal jurisdiction in Pennsylvania for the alleged actions of its subsidiary, USHA, merely because of a parent-subsidiary

relationship. (Doc. 32, at 21). Thus, USHG disputes both whether this Court has personal jurisdiction pursuant to Rule 12(b)(2) and whether USHG can be held liable under the TCPA pursuant to Rule 12(b)(6) for the unauthorized calls and text messages placed by insurance agents who are apparently agents/employees of USHA**.** (*See* Doc. 32, at 23; 30).

In support of its Motion to Dismiss, USHG attached a four-page affidavit from Konrad H. Kober, USHG's Chief Administrative Officer. (Doc. 32-1 at ¶¶ 1-2). The affidavit declares that USHG, is a holding company for various subsidiaries including USHA. *Id.* at ¶ 4. Each of these subsidiaries is a separate and distinct entity. *Id.* USHG, therefore, "does not exert any control over USHA's daily affairs." *Id.* at ¶¶ 7-8. Among other things, USHG is not licensed to conduct business in Pennsylvania, has never attempted to procure business in Pennsylvania, has not created any marketing materials directed toward Pennsylvania consumers, does not conduct telemarketing or send text messages to solicit business from potential customers, does not operate a call center in Pennsylvania, and did not authorize agents to send marketing calls or texts, using an autodialer or prerecorded voice, on its behalf in Pennsylvania. More specifically, USHG has no contractual relationship or ability to control the agents that allegedly sent the communications at issue to Plaintiffs and did not authorize or direct any person to make them. *Id.* at ¶¶ 10-20.

Ford, along with the other Plaintiffs, responds that their allegations, which state that the unsolicited communications were made at the direction of USHG, are sufficient to establish that USHG is directly and indirectly liable under the TCPA for the conduct giving rise to Plaintiffs' claims. (Doc. 34, at 22-23).

USHG's affidavit is insufficient to challenge the Court's exercise of personal jurisdiction over USHG with respect to Ford's claims. In reviewing a defendant's Rule 12(b)(2) challenge, the Court "may consider the well-pleaded factual allegations in the complaint in addition to the parties' jurisdictional evidence." *Arrington v. Colortyme, Inc.*, 972 F. Supp. 2d 733, 742 (W.D. Pa. 2013). Since the crux of this dispute revolves around the extent of the relationship between USHG and USHA, the vast majority of the evidence relevant to this issue lies within USHG's own custody. Thus, in raising this factual challenge, we would expect USHG to provide more affirmative proof rather than a general denial of Plaintiffs' allegations. *Cf. Arrington*, 972 F. Supp. 2d at 742 (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)) (stating that "a short self-serving affidavit with no supporting documentation . . . cannot itself sustain a factual attack on the Court's subject-matter jurisdiction"). USHG's factual challenge to the Plaintiffs' allegations is therefore insufficient. Accordingly, we will assume the Plaintiffs' allegations are true, and analyze whether they establish this Court's personal jurisdiction over USHG through either direct or vicarious TCPA violations.

As an initial matter, the TCPA "was intended to combat, among other things, the proliferation of automated telemarketing calls . . . to private residences, which Congress viewed as a nuisance and an invasion of privacy." *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 322 (3d Cir. 2015) (citations omitted). The TCPA provides a private right of action for prohibited uses of an "automatic telephone dialing system." 47 U.S.C. § 227(b)(3). In relevant part, the TCPA prohibits "any person within the United States . . . from mak[ing] any call using any automatic telephone dialing system or an artificial or prerecorded voice to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to a cellular device. 47 U.S.C. § 227(b)(1)(A)(iii). "A text message to a cellular telephone qualifies as a 'call' within the purview of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016).

Regarding a seller's direct liability for the acts of a third party marketing agent, the Federal Communications Commission ("FCC") explained that, under the TCPA, "a construction of the statute that concludes that a seller always initiates a call that is made by a third party on its behalf would entirely collapse the distinction, reflected in our current rules, between seller and telemarketer." *In re Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6583 (2013). It went on to clarify, however, that "one can imagine a circumstance in which a seller is so involved in the placing of a

specific telephone call as to be directly liable for initiating it—by giving the third party specific and comprehensive instructions as to timing and the manner of the call, for example." *Id; cf. Hartley-Culp v. Green Tree Servicing, LLC*, 52 F. Supp. 3d 700, 703 (M.D. Pa. 2014) (holding in a case involving unauthorized calls from a telemarketing service on behalf of a creditor that "the TCPA can impose liability directly or vicariously upon any person or entity on whose behalf a third party places a call in violation of § 227(b)(1)(A)"). The Supreme Court has also recognized that the TCPA does provide for vicarious liability. *See Campbell-Ewald Co.*, 136 S.Ct. at 673 (2016) (stating the FCC "ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations . . . and we have no cause to question it"); *see also Abramson v. Agentra, LLC*, No. CV 18-615, 2018 WL 6617819, at *4 (W.D. Pa. Dec. 18, 2018) (reasoning that although a seller generally does not initiate calls made by third party telemarketers within the meaning of the TCPA, it may be held vicariously liable, under federal common law principles of agency, for violations of § 227(b) committed by third party telemarketers).

Ford has sufficiently alleged that USHG is directly liable for making the unauthorized communications at issue. In Ford's allegations, the Amended Complaint states, "Defendants and/or their agents made telephone calls and sent text messages to, Ford's cell phone without his consent, using an autodialer." (Doc. 25 at ¶ 94). That statement is sufficient to plead that USHG is directly liable under the

TCPA. *See Kline v. United N. Mortg. Bankers Ltd.*, No. 4:18-CV-00489, 2018 WL 4404674, at *1 (M.D. Pa. Sept. 17, 2018) (holding that the plaintiff's "direct liability TCPA claim . . . survives" because he "clearly alleged" that the defendant used equipment to make autodialed telemarketing telephone calls to the plaintiff's cell phone and "made prerecorded or artificial voice calls to [the plaintiff's] cellular telephone"); *Richardson v. Verde Energy USA, Inc.*, No. CV 15-6325, 2016 WL 7380708, at *4 (E.D. Pa. Dec. 19, 2016) (holding that the plaintiffs sufficiently alleged that the defendant was directly liable for violating the TCPA by alleging: "Defendant made one or more authorized calls to Plaintiffs' cell phones using an [Automatic Telephone Dialing System] and/or pre-recorded voice for the purpose of soliciting business") (emphasis omitted). In further support of that allegation, the Amended Complaint goes on to explain that USHA agents "often publicize themselves as working for USHG." *Id.* at ¶ 46. To illustrate, Ford alleges that he received a text message from Williams, whose LinkedIn profile identifies him "as an employee and/or agent of [USHG] with a job title: 'USHealth Licensed Health Advisor at US Health Group.'" *Id.* at ¶ 106. The messages that Williams sent to Ford also show that they were "sent on behalf of [USHG] and [USHA]." *Id.* at ¶ 107. Thus, Ford has properly alleged that USHG is directly liable under the TCPA for the authorized communications he received.

Given that Ford has pled direct liability under the TCPA, this Court does not need to address whether Ford has sufficiently alleged USHG's vicarious liability for the unsolicited communications at issue. *See* Fed. R. Civ. P. 8(d) (when a party makes alternative statements of a claim, "the pleading is sufficient if any one of them is sufficient"). Nonetheless, Ford has properly plead that USHG is vicariously liable for sending the unsolicited communications to Plaintiffs. The Amended Complaint states that "[USHA] acted on [USHG's] behalf or at its direction when engaging in the conduct alleged within Pennsylvania giving rise to Plaintiffs' claims." (Doc. 25 at ¶ 24). This statement is sufficient to plead vicarious liability. *See Hartley-Culp*, 52 F. Supp. 3d at 704 (holding a pleading that stated unauthorized calls were made "at [the defendant's] direction" was "enough to state a claim, plausible on its face, that [the defendant] is vicariously liable for the phone calls made by [third parties]") (emphasis omitted). To further support this conclusion, however, the Amended Complaint explains that USHA is USHG's "wholly owned subsidiary and 'marketing arm,' consisting of approximately 3,500 telemarketing agents nationwide." *Id.* at ¶ 40. USHG uses USHA "to market, solicit, and/or sell individual insurance underwritten by [USHG's] other wholly-owned subsidiaries, Freedom Life Insurance Company of America and National Foundation Life Insurance Company." *Id.* at ¶ 12. Moreover, USHA pays agents in shares of USHG's stock for "signing up new consumers for Defendants' health insurance products." *Id.* at ¶ 41.

Together, these facts, taken as true, are sufficient to allege a claim of vicarious liability against USHG, regardless of the job title USHG assigns to these third party telemarketers or the alleged relationship between USHG and USHA. *See Abramson*, 2018 WL 6617819, at *4 (holding that the plaintiff stated a plausible claim of vicarious liability by establishing that the defendant "outsources its telemarketing and authorizes those third-parties to enter into contracts on its behalf"). At this stage in the litigation, Ford has stated a plausible claim of direct and vicarious liability against USHG. With respect to Ford's claims, USHG's motion to dismiss is denied.

2. <u>Plaintiff Pershwitz</u>

Though this Court has personal jurisdiction over USHG with respect to Ford's claims, we do not have specific personal jurisdiction over USHG regarding Pershwitz's claims, because Pershwitz has not pled a connection between USHG's alleged behavior and Pennsylvania. Here, Pershwitz is a citizen of Texas. (Doc. 25 at ¶ 11). Though he placed his cell phone number on the National Do Not Call Registry, he began to receive unsolicited and unauthorized phone calls and text messages from Defendants, using an autodialer and prerecorded voice. *Id.* at ¶¶ 123-124. Pershwitz neither provided Defendants with express consent to contact him, nor does he have a business relationship with them. *Id.* at ¶ 147. These communications produced the same deleterious effects on Pershwitz as they did on Ford. *Id.* at ¶¶ 148-149. Pershwitz never pled, however, that he received any of these calls or text

messages in Pennsylvania. Since Pershwitz has not established any sort of connection between Pennsylvania and the specific claims at issue, we have no basis to exert specific personal jurisdiction over USHG regarding his claims. Accordingly, because we lack general and specific jurisdiction over Pershwitz, USHG's motion to dismiss is granted regarding Pershwitz's claims, and Pershwitz is dismissed as a plaintiff.

3. Putative Class Members

Now, we will address whether there is specific personal jurisdiction over USHG with respect to the claims of the putative class members. USHG argues that in accordance with the Supreme Court's decision in *Bristol-Meyers Squibb*, we cannot exercise specific personal jurisdiction over the claims of putative class members, who did not suffer harm in Pennsylvania with respect to USHG's dissemination of unauthorized calls and text messages. (Doc. 32, at 25). In *Bristol-Meyers Squibb*, the Court specifically held that the California courts could not exercise specific jurisdiction over the claims of those plaintiffs who were "not California residents and do not claim to have suffered harm in that State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1782. This decision left open "whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court," and "whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class

of plaintiffs, not all of whom were injured there." *Id.* at 1783-84, 1789, n. 4 (Sotomayor, J., dissenting).

District Courts disagree about whether *Bristol-Myers Squibb* applies in the class action context. *See Chernus*, 2018 WL 1981481, at *7 (collecting cases on both sides of the split). The only Circuit Court to have addressed *Bristol-Meyers Squibb*, the Court of Appeals for the District of Columbia Circuit, declined to analyze specific jurisdiction with respect to the claims of non-resident putative class members, reasoning that such an analysis was premature given that the putative class members were not yet parties to this litigation. *Molock v. Whole Foods Mkt. Grp., Inc.*, No. 18-7162, 2020 WL 1146733, at *3 (D.C. Cir. Mar. 10, 2020) ("Putative class members become parties to an action—and thus subject to dismissal—only after class certification."); *see also Chernus*, 2018 WL 1981481, at *8 (taking the same approach "to determine whether this Court has specific jurisdiction over Defendant with respect to the claims of the unnamed class members prior to class certification would put the proverbial cart before the horse"). Without class certification, putative class members are not yet parties before a court, rendering premature USHG's motion to dismiss the claims of putative class members. Thus, USHG's motion to dismiss the claims of putative class members is denied, but USHG may raise these issues again at the class certification stage.

## III. CONCLUSION

For the reasons stated above, we grant USHG's Motion to Dismiss (Doc. 31) regarding Pershwitz's claims, deny USHG's Motion to Dismiss (Doc. 31) regarding Ford's claims, and deny as premature USHG's Motion to Dismiss (Doc. 31) regarding the claims of putative class members.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1. Defendant USHG's Motion to Dismiss, (Doc. 31), with respect to Plaintiff Edward Pershwitz's claims, is **GRANTED.** The clerk shall terminate Pershwitz as a plaintiff to this proceeding.
2. Defendant USHG's Motion to Dismiss, (Doc. 31), with respect to Plaintiff Joseph Ford, Jr.'s claims, is **DENIED.**
3. Defendant USHG's Motion to Dismiss, (Doc. 31), with respect to the claims of the putative class, is **DENIED** as premature.
4. The Court shall conduct a telephonic case management conference in this matter on June 29, 2020 at a time to be set by future Order of Court. The parties deadlines concerning the filing of a joint case management plan shall also be set by future Order of Court.

s/ John E. Jones III
John E. Jones III
United States District Judge